MARY O. FURNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3728–64, 1950–65. Filed November 21, 1966.

Mary O. Furner, pro se.

*William J. Gerard,* for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioner's income tax for the calendar years 1960 and 1961 in the amounts of $251.61 and $340.72, respectively.

The issue for decision is whether petitioner, a junior high school teacher, is entitled, under section 162 of the Internal Revenue Code of 1954,[1] to a deduction for her expenditures during the years 1960 and 1961 for full-time graduate study leading to a master's degree.

### FINDINGS OF FACT

Some of the facts were stipulated and are found accordingly.

Petitioner filed her individual Federal income tax return for the calendar year 1960 with the district director of internal revenue at Syracuse, N.Y., and filed her individual Federal income tax return for the calendar year 1961 with the district director of internal revenue at Chicago, Ill.

In 1957 petitioner received a bachelor of arts degree from the State University College for Teachers at Albany, N.Y., with a "major" in social studies which included 48 semester hours of history and courses in economics, sociology, and political science.

After graduation, petitioner accepted a position as a teacher in Argyle, Minn., beginning in September of 1957. She remained at Argyle for only 1 school year, terminating her employment in June 1958. At Argyle, petitioner taught subjects in each of grades 7, 8, 10, 11, and 12. For the next 2 school years, until June of 1960, petitioner taught social studies at the eighth-grade level at Crookston, Minn.

Petitioner, while teaching in Minnesota, believed that she was well prepared for her profession in terms of courses in the field of education, but thought she needed "more depth" in the subject matter she was teaching. Primarily, petitioner taught history, and she believed that a further knowledge of history would improve her skill as a teacher of history.

It is normal for teachers to take courses on a graduate level after they have entered the teaching profession. Professional journals in

[1] All references are to the Internal Revenue Code of 1954.

the field of education strongly urge teachers to do further graduate work, and States legislatures revising certification requirements for teachers have increasingly made graduate study a requirement for continued certification.

Petitioner knew that in many school systems she would be required to have a master's degree within a certain period of time. She also knew that other school systems would prefer that their teachers have such degrees. If petitioner had remained at Crookston, she would have been required to present 6 semester hours of graduate work every 5 years and within a certain length of time to obtain a master's degree.

Since petitioner believed that her teaching required greater depth of subject matter than she possessed, and since she believed that she could not gain this depth by obtaining a graduate degree from a teachers college, she decided to attend a university. Petitioner further believed that it would be difficult to obtain the courses in history she wanted to take by enrolling on a part-time basis. She therefore decided to study as a full-time student at Northwestern University during the school year 1960–61.

It was not customary for Crookston to grant leaves of absence for its teachers. Crookston did not have a sabbatical-leave arrangement. Petitioner resigned from her position in Crookston in June of 1960 and was not on a formal leave of absence at that time. She was not under contract to teach there or at any other place the following year.

During the summer of 1960, petitioner taught social studies to boys of junior high school age in a reading camp at Winter Harbor, Maine. She then enrolled at Northwestern in September of 1960.

While at Northwestern, petitioner took courses in United States History since 1890, Modern France, Cultural and Intellectual History of Russia, Historical Research, Problems on United States History, and Recent United States History. After taking 36 credit hours, petitioner received a master of arts degree from Northwestern in August of 1961.

Petitioner did not teach while at Northwestern; she was not a graduate assistant; and she received no financial assistance.

In April of 1961, petitioner signed a contract to teach in a junior high school in DeKalb, Ill., beginning in September of that year. She began teaching in the junior high school at DeKalb under this contract in September of 1961 and has taught there ever since. Petitioner teaches two classes of American history and two classes of world history. These subjects at the junior high school level are regarded as "social studies."

The DeKalb school in which petitioner teaches is located on the campus of Northern Illinois University and is financed by that university. Petitioner did not need certification from the State of Illinois to teach in this school. Petitioner is certified in the States of New

York and Minnesota but not in Illinois, although from the date of her receipt of her bachelor of arts degree in 1957 she has meet the requirements for certifications in Illinois.

The DeKalb school in which petitioner teaches has, and had in 1961, a stated requirement that its teachers have a master's degree, although it employs some teachers who do not have such a degree. Petitioner received a higher salary during her first year of teaching at DeKalb than she had received at Crookston. This higher salary was due in part to a general increase in the level of teachers' salaries, in part to her additional year of experience, and in part to the fact that she had a master's degree. This school by which petitioner was employed in DeKalb, as is customary in other secondary schools, paid a higher salary to a teacher with a master's degree than to a teacher who is teaching the same subject at the same grade level who has only a bachelor's degree.

Under the rule of the school by which petitioner is employed at DeKalb she would be required to take 30 semester hours of graduate work beyond her master's degree within a period of 7 years, although she is classified as a permanent employee. When petitioner commenced her graduate work at Northwestern she had no knowledge of the existence of the position she later accepted in the DeKalb school.

Petitioner on her Federal income tax returns for 1960 and 1961 claimed deductions of $1,228 and $1,703.62, respectively, as educational expenditures incurred while attending Northwestern. Respondent in his notice of deficiency disallowed these claimed deductions with the following explanation for the year 1960:

(a) It has been determined that you have not established that the deduction claimed on your income tax return for the taxable year ended December 31, 1960 for education expenses in the sum of $1,228.00 is allowable. Section 162 and Section 262, Internal Revenue Code of 1954. Accordingly, your taxable income has been increased in the amount of $1,228.00 for the taxable year 1960.

The notice of deficiency for the year 1961 was on a form which did not include a statement of the reason for the disallowance but referred to the explanation being included in a "report of examination" a copy of which had been forwarded to petitioner.

#### ULTIMATE FACTS

1. Petitioner was not practicing the teaching profession during the time she was enrolled in graduate studies at Northwestern University and was not therefore engaged during that time in carrying on a trade or business of teaching.

2. Petitioner took the full-time graduate course of study at Northwestern University primarily for the purpose of obtaining a new position or substantial advancement in position or for meeting the

minimum qualifications of certain schools for a teacher of social studies at the junior high school level.

### OPINION

Section 162(a) provides that there shall be allowed as a deduction all the "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." In order to be entitled to the claimed deductions for amounts expended in doing graduate work at Northwestern University, petitioner must show that such amounts constitute ordinary and necessary expenses paid "in carrying on a trade or business." Otherwise the expenditures are nondeductible under section 262 as personal expenses.

The Code makes no specific mention of educational expenses, but such ordinary and necessary expenses incurred in "carrying on" a trade or business have been held to be deductible, *Hill* v. *Commissioner*, 181 F. 2d 906 (C.A. 4, 1950), reversing 13 T.C. 291 (1949), and the Commissioner's regulations [2] have for a number of years specifically provided for the deduction of educational expenses.

---

[2] Sec. 1.162–5 (a) and (b), Income Tax Regs., provide as follows:

(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

(2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.

Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purposes described in subparagraph (1) of this paragraph. Expenditures for education of the type described in subparagraph (2) of this paragraph are deductible under subparagraph (2) only to the extent that they are for the minimum education required by the taxpayer's employer, or by applicable law or regulations, as a condition to the retention of the taxpayer's salary, status, or employment. Expenditures for education other than those so required may be deductible under subparagraph (1) of this paragraph if the education meets the qualifications of subparagraph (1) of this paragraph. A taxpayer is considered to have made expenditures for education to meet the express requirements of his employer only if the requirement is imposed primarily for a bona fide business purpose of the taxpayer's employer and not primarily for the taxpayer's benefit. Except as provided in the last sentence of paragraph (b) of this section, in the case of teachers, a written statement from an authorized official or school officer to the effect that the education was required as a condition to the retention of the taxpayer's salary, status or employment will be accepted for the purpose of meeting the requirements of this paragraph.

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position or substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible.

In the instant case petitioner does not contend that she undertook her graduate studies at Northwestern in order to meet any express requirement of her employer or of regulations imposed as a condition to the retention of her salary, status, or employment, but contends that her primary purpose in enrolling at Northwestern as a full-time graduate student was the maintaining or improving of skills required in her profession as a teacher. The evidence shows that during the period of petitioner's enrollment at Northwestern she was not actually employed in teaching or on a leave of absence from a teaching position or actively seeking current employment as a teacher prior to completion of her graduate studies. Petitioner contends that even though she was not during the period of her studies at Northwestern either teaching, under contract to teach, on a leave of absence from a teaching position, or seeking to uninterruptedly continue in a teaching position by obtaining such a position to commence prior to her completion of her graduate work and obtaining of her master's degree, she was in the profession of teaching, which profession constitutes a "trade or business."

We do not question, but agree with petitioner, that teachers are a professional group and such professional status is not lost because the individual is for some period of time not actively employed as a teacher. We agree that just as a lawyer remains a member of the legal profession although he may not for a period of time engage in the practice of law and a doctor remains in the medical profession under similar circumstances, so a teacher remains in the teaching profession whether she is actively teaching or not. However, we do not agree that a professional person who is not actively practicing his profession, either as a private practitioner or an employee, is engaged in "carrying on" the trade or business of the practice of that profession merely because he remains a member of the profession.

Respondent's regulations governing deductions of educational expenses do not specifically use the term "carrying on" a trade or business, but since in order to be entitled to the deduction under the section of the Code to which the regulations relate, a taxpayer must be "carrying on" a trade or business, it is inherent from the statute, as well as the general wording of respondent's regulations that to be entitled to the deduction provided for in those regulations a taxpayer must be "carrying on" a trade or business.

Respondent in the instant case bases his argument that petitioner should be denied the deduction she claims for educational expenditures primarily on Rev. Rul. 60–97, 1960–1 C.B. 69, in which he states that "a taxpayer who is not currently employed or is not otherwise actively engaged in a trade or business is not entitled to a deduction for the expenses of any education undertaken during such period of unemploy-

ment or inactivity." This ruling, of course, is not equivalent to a regulation. It is merely respondent's position.

However, if respondent's ruling is interpreted to mean that educational expenses are to be deducted only by a person "carrying on" a trade or business where the expenses otherwise meet the requirements of business expenses, the ruling is in accordance with the statute providing for deduction of business expenses.

Respondent in his argument that the fact that petitioner was not actively engaged in teaching during the period of her graduate studies at Northwestern University, precludes her from being entitled to the claimed deduction for educational expenses, recognizes, and in fact his ruling provides, that a person on a vacation or on leave of absence from a position will be considered as employed or actively engaged in pursuing his trade or business. The "practice" of a profession is, of course, the "carrying on" of a trade or business. *Henry G. Owen*, 23 T.C. 377 (1954). However, as held in *Henry G. Owen*, merely being a member in good standing of a profession is not the "practice" of that profession or the "carrying on" of a trade or business. We have recognized that a taxpayer who temporarily ceases active participation in a trade or business during a transitional period between leaving one position and obtaining another may be "carrying on" a trade or business during such a transitional period where the facts show that he is actively seeking new employment. *Harold Haft*, 40 T.C. 2 (1963). However, expenses to establish a business incurred after decision to enter such business has been made but prior to commencement of such business are not deductible but are more in the nature of a capital investment. *Richmond Television Corp.* v. *United States*, 345 F. 2d 901 (C.A. 4, 1965), and cases there cited, remanded on another issue 382 U.S. 68 (1965).

On the basis of the evidence in the instant case, we have concluded that during the time petitioner was undertaking her graduate studies at Northwestern she was not engaged in "carrying on" a trade or business. Petitioner voluntarily resigned her position at Crookston, Minn., in order to pursue full-time study at Northwestern University. Although petitioner testified and we have found as a fact that it was not "customary" for Crookston to grant leaves of absence to its teachers, there is no evidence that petitioner attempted to have the school make an exception for her and grant her a leave of absence. The evidence does not show that she even attempted to or desired to return to her position at Crookston. The clear import from the record is that after resigning her position at Crookston, she did not seek any employment as a teacher until approximately April of 1961 when she began to look into positions at places other than Crookston in which she might be interested for the school year commencing in September 1961. The evidence shows that petitioner's full-time "occupation"

from September of 1960 through August of 1961 was being a graduate student. Such an occupation does not constitute "carrying on" the trade or business of teaching. Petitioner's situation is similar to that of a student who after receiving a bachelor of arts degree becomes certified as a teacher but instead of accepting employment continues as a student pursuing graduate studies to receive a master's degree and thus be qualified for a better teaching position.

The factual situation in the instant case is quite comparable to that in *Canter* v. *United States*, 354 F. 2d 352 (Ct. Cl. 1965), involving a nurse employed by the Public Health Service who resigned to do further professional study. In the *Canter* case the court held that even though the taxpayer continued to be a nurse while pursuing further education, she was not "carrying on" a trade or business as a nurse during that period. In its opinion, the court stated with respect to certain cases relied on by the taxpayer there involved, some of which are also relied on by petitioner in the instant case:

None of the cases cited by plaintiff dealt with factual circumstances like hers. The taxpayer in Cosimo A. Carlucci, 37 T.C. 695 (1962), acq., 1962-2 Cum. Bull. 4, was employed during the period in question; his classes were held at night. In John S. Watson, 31 T.C. 1014 (1959), nonacq., 1963-2 Cum. Bull. 6, the taxpayer was actively engaged in the practice of medicine. Thus, in each of these cases, it was clear that the taxpayer was carrying on a business during the years in which the expenses were incurred. A case which comes closer to the one at bar is Peggy A. King, 21 CCH Tax Ct. Memo. 495, P-H Memo. T.C. ¶62,093 (1962). Miss King was a teacher in the Fort Worth public school system. During part of the pertinent year, she was a full-time graduate student at Stanford University. She was permitted to deduct educational expenditures including those incurred at Stanford. However, during the months in question, Miss King was either under contract with the Fort Worth School System or on leave of absence. This is a material distinction between her situation and that (in 1960) of Mrs. Canter. The cases cited by plaintiff are fully in accord with the proposition that, before a person can qualify for a deduction under section 162, he must either be engaged in remunerative activity or have a definite connection, such as leave of absence, with a position.

In the instant case since petitioner was not employed or otherwise actively engaged in teaching or on a leave of absence from any teaching position or actively seeking to uninterruptedly continue in a teaching position by obtaining such a position to commence prior to the completion of her graduate studies, we conclude that at the time the expenditures here involved were made, petitioner, though still a member of the teaching profession, was not engaged in the practice of that profession so as to be "carrying on" a trade or business.[3]

However, even were we to consider petitioner to be "carrying on" a trade or business as a teacher for the full year she was doing graduate work, we would nevertheless on this record deny her claimed deduction

---

[3] The facts here are somewhat comparable to those in *Gian Chand Sud*, T.C. Memo. 1965-102, in which we held the taxpayer not to be entitled to a deduction for expenditures made for education.

for educational expenditures. Petitioner in her testimony did not specifically state that upon the completion of her graduate work she intended to obtain a better position and not to attempt to return to Crookston, Minn., but the import of her statements in the record is that such was in fact her intention. She refers to not knowing of the existence of the position which she ultimately took in DeKalb, Ill., until approximately April of 1961, the inference being that at that time she began to investigate openings available for the school year beginning in September of 1961. Petitioner testified that normally a teacher is paid a higher salary because of having a master's degree and that in her position in DeKalb, Ill., she was paid a higher salary because of having this degree. She testified that some schools require a master's degree for the position of a teacher of social studies at the junior high school level and that the school in which she obtained a position in DeKalb had such a stated requirement. The substance of her testimony is that even though she was concerned with improving her skills, she likewise was concerned with obtaining a new position and advancement in her profession and with being qualified to meet the minimum standards of teaching positions that required a social studies teacher at the junior high school level to have a master's degree. If one of these factors other than that of improving her skills as a teacher was the "primary purpose" for which petitioner pursued her graduate studies at Northwestern University, she is not entitled under respondent's regulations to her claimed deduction for educational expenses.

Respondent's regulations with respect to deduction of educational expenses require a factual determination of the "primary purpose" of a taxpayer in undertaking education. In a situation where the education is undertaken for several purposes, even the taxpayer pursuing the education is unlikely to know the "primary purpose" of undertaking the education. For this reason the Court is confronted with the task of determining from the circumstances under which the education was undertaken and the actions of the taxpayer as well as the testimony as to the purpose of undertaking the education, which of several purposes was "primary." The task is a difficult one and for this reason there has been adverse criticism of respondent's regulations. Nevertheless, our Court and other courts have accepted respondent's regulations as a proper interpretation of the law and have applied them in varying factual situations. See *Cosimo A. Carlucci*, 37 T.C. 695 (1962), and *Sandt* v. *Commissioner*, 303 F. 2d 111 (C.A. 3, 1962), affirming Memorandum Opinions of this Court.

Petitioner argues that her primary purpose in undertaking a full year of graduate study and obtaining her master of arts degree was to improve her knowledge of history and thus make herself better able to inspire junior high school children to have an interest in history.

Petitioner's actions indicate that she intended to obtain a better position by undertaking graduate work and that she intended to meet the minimum requirements of positions for social studies teachers in junior high schools that require such a teacher to have a master's degree. Respondent's regulations provide that the fact that the education undertaken meets the express requirement of a new position will be an important factor indicating that it was undertaken "primarily" for the purpose of obtaining such position. Although petitioner had been a teacher, and after obtaining a master's degree continued to be a teacher, she did not continue in the same employment. We stated in *Joseph T. Booth III*, 35 T.C. 1144, 1148 (1961):

> The regulations refer to a new position or substantial advancement in position and not to a new profession. The facts of this case show that petitioner's education in the law of taxation was undertaken primarily for the purpose of becoming a partner in Wright, Long & Booth which was for him a new position even though he continued to engage in his same profession, the practice of law. Under the Commissioner's regulations, on which both parties rely, the expenses incurred are not deductible. Cf. *Robert M. Kamins*, 25 T.C. 1238 (1956), and *Arnold Namrow*, 33 T.C. 419 (1959), * * *

On the basis of the record in the instant case we conclude that petitioner undertook her further education primarily for the purpose of obtaining a new position or advancement in position or meeting the minimum qualifications for certain teaching positions. In any event, the record is insufficient to show that petitioner's primary purpose in undertaking the education was not to obtain a new position, advancement in position, or to meet the minimum qualifications for a new position. The burden of proving that she is entitled to the claimed deductions rests on petitioner, and this burden she has not discharged. Therefore, even though petitioner were to be considered as "carrying on" a trade or business as a teacher while she was engaged in graduate studies on a full-time basis, we would nevertheless conclude that she has failed to establish that she is entitled to the claimed deductions for educational expenses.

Reviewed by the Court.

*Decisions will be entered for respondent.*

---

TANNENWALD, *J.*, concurring: I concur in the result reached by the majority solely on the ground that under the facts and circumstances of this case the taxpayer was not carrying on a trade or business during the taxable period in question within the meaning of section 162(a).

---

SIMPSON, *J.*, dissenting: I must dissent from the opinion of the majority in all respects. I believe that the majority takes too restric-

tive a view of the "trade or business" of teaching, and I do not understand how the majority can disregard the forthright and obviously sincere testimony of the petitioner and find that her primary purpose was to obtain a position about which she knew nothing.

The majority seems to feel that if one is not being paid for actively conducting classes, he is not in the trade or business of teaching. I disagree. Effective teaching requires that a teacher keep abreast of new developments in how to relate the subject matter he is teaching to his students. A teacher must also constantly strive to improve his understanding of his subject matter, for, indeed, all a teacher can impart to his students is the understanding he himself has. Thus, continual self-improvement is a common and necessary part of the teaching profession. The most efficient manner of achieving this self-improvement is through further formal education, either "in-service" or in colleges and universities.

If petitioner had undertaken her graduate studies on a part-time basis in the evenings, or if she had attended Northwestern only during summers, the respondent would not question her status of being engaged in a trade or business. Rev. Rul. 60–97, 1960–1 C.B. 69. I believe that a person is no less engaged in a trade or business if he undertakes full-time study for one 12-month period than if he undertakes full-time study for four or more 3-month periods spread over a number of years. In my view, the deciding factor is whether the active pursuit of a trade or business is left temporarily for the sole purpose of obtaining education with the intent to immediately return at the completion of the education. Petitioner's graduate study was of substantial value to her trade or business of being a teacher. Therefore, her absence from active teaching was in pursuit of a valid business objective.

In effect, petitioner took a temporary leave of absence from her "trade or business" for the sole purpose of obtaining further education that would improve her skills as a teacher, and the expense of obtaining this objective is an expense incurred in carrying on a trade or business. Rev. Rul. 60–97, 1960–1 C.B. 69, expressly provides that a taxpayer will not be considered to have ceased to engage in business when he is on a temporary leave of absence. But respondent argues that there must be a "formal" leave of absence. I disagree. A piece of paper or the maintenance of the taxpayer's name on the employer's personnel rolls does not make a taxpayer any more or any less actively engaged in a trade or business. A formal leave of absence, like the maintenance of an office or a retail store, may be some indication of the taxpayer's intent with regard to his trade or business, but here, I am satisfied with petitioner's intent.

Reviewing the facts, I find that petitioner wanted to improve her skills as a teacher by undertaking further study of history. There

were two methods by which she could accomplish this goal. One was by part-time evening and summer study while she continued teaching. The other method was by enrolling in a university for a full-time graduate program. Petitioner did not doubt which method would benefit her more. Both methods were reasonable paths to her goal. As was said in *Hill* v. *Commissioner*, 181 F. 2d 906, 908 (C.A. 4, 1950), reversing 13 T.C. 291 (1949), "If the particular course adopted by the taxpayer is a response that a reasonable person would normally and naturally make under the specific circumstances, that would suffice." There is persuasive evidence that study on a full-time basis may be a better educational program than study on a part-time basis, and it would be unfortunate for the tax law to treat more favorably the person engaged in part-time study.

The respondent and the majority rely on *Canter* v. *United States*, 354 F. 2d 352 (Ct. Cl. 1965). Canter was a registered nurse employed by the U.S. Public Health Service. She took leave of absence from her job on February 1, 1958, which leave expired (and could not be renewed) on August 26, 1958. She enrolled as a full-time student of nursing at the University of Maryland in February of 1958. She received a B.S. degree in June 1960. In September of 1960, she began graduate study in nursing at the University of Maryland, receiving her master's degree in June 1962. After completing her education, she accepted a position with Montgomery County, Md. She returned to the Public Health Service in May of 1963. The court found that, in 1960, Canter was not "on temporary leave of absence either in form or in substance," and her expenses of education in that year were not deductible.

I think that the *Canter* case is clearly distinguishable since it involved a much longer absence from her active nursing work. However, I do agree with a statement of Judge Davis in his dissent in that case that "the concept of a temporary leave of absence must be seen functionally and realistically, not technically or formally."

I also disagree with the majority's finding that petitioner undertook her study "primarily for the purpose of obtaining a new position or advancement in position or meeting the minimum qualifications for certain teaching positions." This finding is pure conjecture.

The majority's reasoning seems to be that while petitioner testified that she undertook her study to improve her teaching skills, it is obvious from her testimony that she also knew that a master's degree would bring her a higher salary and help her meet the minimum requirements for "better" teaching positions. Therefore, the majority reasons that petitioner probably did not know her primary purpose in undertaking the education, and since the Court must choose a primary purpose for her, it will choose a purely economic interpretation of the facts.

I cannot understand why the majority refuses to believe petitioner's testimony that her purpose in undertaking further study was to improve her skills as a teacher of history. This is the only purpose petitioner mentioned throughout the record of this case. Petitioner was not represented by counsel, and so she did not use the magic formula of "primary purpose," but it is obvious from a reading of the record that to improve her skills was the purpose she had in mind. And we really have no basis for disbelieving petitioner's testimony. The majority relies on the evidence in the record that petitioner knew that teachers with masters' degrees generally receive higher salaries and that a master's degree fulfilled the final certification requirements in most school systems. Of course, she knew this. Almost all teachers do. But I cannot agree that because of her knowledge of the requirements of the teaching profession, we should disbelieve her avowed purpose. I receive the impression from the majority's finding as to primary purpose that they simply cannot believe that a teacher would be motivated by a desire to improve her teaching—according to the majority, there must be some ulterior motive, most probably an economic one.

Petitioner, after receiving her master's degree, continued teaching the same subjects on the same level she had taught before receiving her master's degree. But the majority holds that since she received an increase in salary and since her education met the requirements of the teaching position at the DeKalb school, the education was undertaken primarily for the purpose of obtaining such position or advancement. Section 1.162–5, Income Tax Regs., recognizes that the fact that the education undertaken meets the express requirements for a new position is only an "important" factor in determining the purpose of the education. I am convinced that petitioner did not undertake her education for the purpose of meeting the express requirements for a new position. Petitioner was concerned with improving her skills as a teacher; she was not concerned with the requirements of any one school system. It would be unrealistic to assume that petitioner, while in Crookston, Minn., decided that she wanted to teach at a specific school in DeKalb, Ill., and accordingly decided to give up a year's income and in addition to incur tuition costs at a private university in order to meet the requirements of that school and be eligible for a vacancy on the staff that had probably not yet occurred. Although the petitioner testified that a social science teacher is generally required to have a master's degree, that is not to say that she could not have continued to find employment with her bachelor's degree. Inasmuch as she terminated her employment with the Crookston school system, and it would not have been essential for her to have a master's degree to continue teaching social sciences, I cannot and will not find that she undertook the additional education to secure a new or substantially better position.

I am satisfied that petitioner undertook full-time graduate study during the years in question to improve her skills as a teacher of history or social studies. Undoubtedly, petitioner also recognized that in many school systems she would receive an increased salary if she had a master's degree. Petitioner was aware that in a number of States a master's degree is required within a certain period of time if certification in such a State is to be continued. It may very probably be said, then, that petitioner wished to undertake further study for more than one reason. Such a situation is not unusual, and it is my opinion that these other reasons do not nullify petitioner's desire to improve her teaching skills. That a taxpayer has more than one purpose in undertaking education does not necessarily deny him the privilege of a deduction. *United States* v. *Michaelsen*, 313 F. 2d 668 (C.A. 9, 1963), affirming 203 F. Supp. 830 (E.D. Wash. 1961), and a Memorandum Opinion of this Court; *Marlor* v. *Commissioner*, 251 F. 2d 615 (C.A. 2, 1958), reversing per curiam 27 T.C. 624 (1956). I believe that since the graduate program undertaken by the petitioner substantially aided her in her trade or business as a teacher, the expenses of such a program should be deductible even though she derived some other benefit from the additional education.

Finally, I view this case as analogous in some respects to *Ramon M. Greenberg*, 45 T.C. 480 (1966), revd. 367 F. 2d 663 (C.A. 1, 1966).

DAWSON, *J.*, agrees with this dissent.