Mathew J. Reisinger and Patricia K. Reisinger, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 12371–77.    Filed January 16, 1979.

Mathew J. Reisinger, pro se.
*Susan B. Watson,* for the respondent.

Dawson, *Judge:* Respondent determined a deficiency of $610.74 in petitioners' Federal income tax for the year 1975.

Concessions having been made by the parties, the only issue presented for decision is whether petitioner Patricia K. Reisinger, a qualified licensed practical nurse, may deduct expenditures

for tuition, books, and transportation as business expenses under section 162(a), I.R.C. 1954,[1] while attending a college program to qualify her to become a physician's assistant.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners Mathew J. Reisinger and Patricia K. Reisinger, husband and wife, resided in Churchville, Md., when they filed their petition in this case. They filed a joint Federal income tax return for 1975 with the Internal Revenue Service Center, Baltimore, Md.

Patricia K. Reisinger (hereinafter petitioner) began her employment experience as a dishwasher in a hospital. Thereafter, petitioner served in the military from 1961 through 1963. During that period she was trained and utilized by the military in a surgical specialist capacity. The civilian equivalent of surgical specialist is a licensed practical nurse (hereinafter LPN). After leaving the military in 1963, petitioner was employed as an LPN at Mercy Hospital in Wilkes-Barre, Pa., until 1969.

In 1972, petitioners moved from Pennsylvania to Churchville, Md. At that time, the petitioner attempted to secure employment as an LPN but was unable to do so since the only hospital in the immediate vicinity was fully staffed. Although employment opportunities were better in nearby Baltimore, petitioner did not wish to work there.

Petitioner enrolled in the Johns Hopkins University School of Health Services Health Associates Course and attended classes there from September 3, 1974, through the spring of 1976, when she received a bachelor's degree.

During 1975, petitioner expended $4,025 in tuition and $47 for books and supplies. In addition, petitioner incurred transportation expenses in connection with her educational activities while traveling from her residence in Harford County to the Johns

---

[1] Unless otherwise indicated all statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.

[2] The parties were directed to file briefs by Nov. 13, 1978. Respondent filed his brief on Nov. 6, 1978. Petitioners have not filed a brief, although the Court has considered their oral arguments made at the trial.

Hopkins School of Health in Baltimore and between the school and the various clinics which she was required to visit for practical experience. Petitioner was not gainfully employed while attending Johns Hopkins. She did, however, work without compensation for Sadowsky Surgical Associates during the summer of 1975 for experience.

The Health Associates course is an accredited program which qualifies its graduates to take the primary care physician's assistant certifying examination of the National Commission on the Certification of Physician's Assistants (hereinafter NCCPA). Passing this examination permits an individual to be registered as a certified physician's assistant by the Maryland State Board of Medical Examiners.

The regulations for a licensed physician's delegation of duties to a physician's assistant promulgated by the Maryland State Board of Medical Examiners define a physician's assistant as an individual other than a licensed physician who, after adequate training and registration by the Maryland State Board of Medical Examiners, may perform certain duties that would otherwise be performed by persons licensed to practice medicine.

The Maryland State Board of Medical Examiners provides for two types of physician's assistants: (1) National board certified applicants which are those persons who successfully complete the examination for physician's assistant and (2) noncertified applicants which are those persons who by reason of their prior training, skill, experience, or background may be qualified to perform certain delegated duties but who may not have taken or successfully completed the NCCPA examination for physician's assistant.

In August 1976, petitioner applied for physician's assistant registration as a board certified applicant. She was provisionally accredited pending successful completion of the NCCPA examination. At the same time, the petitioner took a position with Sadowsky Surgical Associates as a physician's assistant. While employed by Sadowsky Surgical Associates, petitioner was engaged both in the performance of services ordinarily performed by a physician's nurse or other office assistants (for example, taking blood pressure and temperature, giving injections, changing dressings) and those ordinarily performed by a physician. Thus, petitioner conducted routine physical examinations and made preliminary diagnoses of patients, performed

minor surgical procedures, and assisted the surgeons in major surgery. Petitioner terminated her employment with Sadowsky Surgical Associates in August 1977 because she was not satisfied with the extent of her job responsibility. Petitioner has since been unemployed, although she expects to seek work as a physician's assistant as soon as she and her husband have completed their move back to Pennsylvania. Petitioner did not pass the NCCPA examination and has postponed registering to take the examination again until she determines if passage of the NCCPA examination will be necessary to qualify as a physician's assistant under Pennsylvania law.

## OPINION

Section 162 allows a deduction for ordinary and necessary business expenses. Section 1.162–5, Income Tax Regs., provides guidelines for determining those educational expenses which are ordinary and necessary expenses incident to a taxpayer's trade or business. Those regulations provide in pertinent part:

(a) *General rule.* Expenditures made by an individual for education * * * which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business, or

\* \* \* \* \* \* \*

(b) *Nondeductible educational expenditures*—(1) *In general.* Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills * * *

\* \* \* \* \* \* \*

(3) *Qualification for new trade or business.* (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. * * *

Petitioner contends that she is in the trade or business of practical nursing and that the program of study undertaken at the Johns Hopkins School of Health merely served to maintain or improve her skills in that field. Moreover, petitioner maintains that the program did not really qualify her for a new

trade or business since a physician's assistant performs duties no different from those previously handled by a licensed practical nurse. She also asserts that we should ignore the separate statutory classifications under Maryland law for the registration of physician's assistants and licensed practical nurses since she believes that they are not truly indicative of any job differentiation.

Respondent, on the other hand, contends that petitioner was not in the trade or business of practical nursing when she enrolled in the Health Associates program at Johns Hopkins in 1974 since she had been unemployed for the previous 5 years. Thus, respondent maintains, petitioner had no trade or business to support an ordinary and necessary business deduction. Alternatively, respondent asserts, if petitioner was in the trade or business of practical nursing, the program qualified her for a new trade or business, physician's assistant, with job duties, functions, and responsibilities which are different from those found in a practical nurse's position.

We agree with each of respondent's contentions. First, petitioner was not in the trade or business of practical nursing when she entered Johns Hopkins Health Associates program in 1974. Whether activities carried on by an individual can be characterized as those of a trade or business under section 162(a) is a question of fact. *Ford v. Commissioner*, 56 T.C. 1300, 1307 (1971), affd. 487 F.2d 1025 (9th Cir. 1973); *Corbett v. Commissioner*, 55 T.C. 884, 887 (1971); *Furner v. Commissioner*, 393 F.2d 292 (7th Cir. 1968), revg. 47 T.C. 165 (1966); *Canter v. United States*, 354 F.2d 352 (Ct. Cl. 1965). In order for an expenditure to be deductible as a business expense, such expenditure must relate to activities which amount to the present carrying on of an existing business. *Koons v. Commissioner*, 35 T.C. 1092, 1100 (1961). Although currently unemployed, a taxpayer can still be engaged in a trade or business if he or she was previously involved in and intends to return to that trade or business. *Haft v. Commissioner*, 40 T.C. 2, 6 (1963). Amounts expended in preparation for the resumption of business at some indefinite future time, however, are not deductible. *Owen v. Commissioner*, 23 T.C. 377, 381 (1954); *Frank v. Commissioner*, 20 T.C. 511, 514 (1953). Mere membership in good standing in a profession does not constitute carrying on a trade or business. *Owen v. Commissioner, supra* at 381.

In the present case, petitioner ceased working as a licensed practical nurse in 1969 for presumably personal reasons. For the next three years she did not actively seek employment as a licensed practical nurse. When petitioner and her husband moved to Maryland in 1972, she made an effort to obtain a practical nursing position but was unable to secure employment in the immediate vicinity of her residence. Petitioner did not seek employment in nearby Baltimore where opportunities were apparently far greater. However, petitioner subsequently commuted to Baltimore to attend the Health Associates program. Consequently, we conclude that her period of unemployment was for personal reasons and constituted an abandonment of her previous trade or business.

In *Canter v. United States*, 354 F.2d 352 (Ct. Cl. 1965), the Court of Claims held that a taxpayer who had resigned her nursing position to attend college on a full-time basis to obtain a bachelor of science degree in nursing could not properly deduct the educational expense because she was no longer in the trade or business of nursing. Of critical importance to the Court of Claims was the lack of remunerative activity by the taxpayer during her schooling and the lack of any direct relationship between her previous job (such as a temporary leave of absence) and school.

In *Furner v. Commissioner*, 393 F.2d 292 (7th Cir. 1968), revg. 47 T.C. 165 (1966), the Seventh Circuit held that a taxpayer who resigned her teaching position to pursue full-time study because she could not obtain a leave of absence, yet fully expected to return to teaching upon completion of her educational program, had not given up her trade or business. Thus, educational expenses which maintained or improved her skills were deductible. See also *Ford v. Commissioner*, 56 T.C. 1300 (1971), affd. 487 F.2d 1025 (9th Cir. 1973); *Picknally v. Commissioner*, T.C. Memo. 1977-321.[3]

Here the petitioner did not leave her nursing position in 1969 to either immediately or shortly thereafter attend a full-time program in her field. She merely stopped working. She remained unemployed up to and through the commencement of her course of study at Johns Hopkins in 1974, Moreover, unlike the

---

[3]Petitioner's reliance on this case is misplaced. In *Picknally*, the taxpayer had left his employment to immediately enter graduate school. We held that the taxpayer was still in the trade or business of teaching or educational administration while in graduate school.

situation in *Haft v. Commissioner*, 40 T.C. 2 (1963), petitioner did not actively seek employment subsequent to 1969. Her efforts in 1972 to obtain employment were minimal at best. Although a temporary cessation of employment does not always indicate that a certain trade or business has been terminated (*Haft v. Commissioner, supra* at 6), the record here does not provide persuasive evidence that petitioner could be considered as being in the trade or business of nursing for the year she seeks a business deduction for educational expenses. Since petitioner has not demonstrated that she was in the trade or business of nursing in 1975, she is not entitled to any deduction for educational expenditures under section 162.

Even if we assumed that petitioner could be considered as being in the trade or business of practical nursing in 1975, we think the claimed deduction for educational expenses should still be disallowed. While it is not disputed that the program at Johns Hopkins would maintain or improve her skills in practical nursing, the critical inquiry is whether the educational expenditure qualified petitioner for a new trade or business. If so, the expense is clearly nondeductible. Sec. 1.162–5(b)(3), Income Tax Regs. In this regard, we have adopted a commonsense approach where we have been required to decide whether an educational program qualified a taxpayer for a new trade or business. *Grover v. Commissioner*, 68 T.C. 598, 601 (1977); *Davis v. Commissioner*, 65 T.C. 1014, 1019 (1976); *Glenn v. Commissioner*, 62 T.C. 270, 275 (1974); *Weiszmann v. Commissioner*, 52 T.C. 1106, 1109 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971). "If substantial differences exist in the tasks and activities of various occupations or employments, then each such occupation or employment constitutes a separate trade or business." *Davis v. Commissioner, supra* at 1019. Thus, this Court has held that a licensed public accountant is in a different trade or business from a certified public accountant. *Glenn v. Commissioner, supra*. In addition, we have held that a registered pharmacist is in a different trade or business from an intern pharmacist, even though such an intern may perform many of the same tasks as a registered pharmacist. *Antzoulatos v. Commissioner*, T.C. Memo. 1975–327.

In the present case, petitioner's educational program both qualified her to take the physician's assistant certifying

examination (NCCPA) and provided her with the necessary training to enter that field, even as an uncertified registrant.[4]

[4]The regulations issued pursuant to Md. Ann. Code art. 43, sec. 122(b)(6)(Supp. 1978) provide, inter alia, that:

10.27.04 Delegation of Duties by a Licensed Physician

Pursuant to the Provisions of Article 43, Section 122(b)(6), Annotated Code of Maryland, an individual other than a licensed physician may perform certain duties which might be construed to be the practice of medicine or surgery in the State of Maryland provided these duties are delegated to him by a licensed physician and that the delegation is in accordance with the regulations of the Maryland State Board of Medical Examiners. It is the desire of the Board of Medical Examiners that the legislative purpose of the statute be implemented in such manner as to provide the maximum in medical services for the benefit of the public consistent with the obligation of the Board to protect the interest of the public and to assure that medical services rendered to the public be of the highest possible quality.

.01 DEFINITIONS

\*     \*     \*     \*     \*     \*     \*

B. "Applicant" means the trained non-physician who applies to the Maryland State Board of Medical Examiners for approval to be a physician's assistant.

C. "Board" means the Maryland State Board of Medical Examiners.

D. "Supervision" means assignment, direction, regulation, and management of the work of the physician's assistant by the physician, consistent with the highest standard and quality of medical care.

E. "National Board Certified Applicant" means any person who successfully completes the examination for Physician's Assistant given by the National Board of Medical Examiners or any other national certifying board recognized by the Board and who applies to the Board for registration as a Physician's Assistant.

F. "Non-Certified Applicant" means any person who, by reason of his or her training, skill, experience, or background may be qualified to perform certain delegated duties but who may not have taken or successfully completed the examination for Physician's Assistant given by the National Board of Medical Examiners, or such other national certifying board recognized by the Board, and who shall apply to the Board for registration as a Physician's Assistant.

\*     \*     \*     \*     \*     \*     \*

.02 PROHIBITED DELEGATION

The delegation by a licensed physician of a duty which constitutes the practice of medicine or surgery is forbidden, except in accordance with these regulations.

.03 CERTIFICATION

\*     \*     \*     \*     \*     \*     \*

(1) All applicants shall be at least 18 years of age.

(2) All applicants shall have sound character and reputation.

B. Requirements for National Board Certified Applicants

(1) National Board Certified applicants shall make application for registration on a form provided by the Board. The application shall contain information relating to the applicant's personal history, education, and experience as the Board may require.

(2) The application shall be accompanied by the applicant's certificate (or certified true copy) of successful completion of the examination given by the National Board of Medical Examiners or any other national certifying board recognized by the Board, as well as other supporting documents the Board may require.

(3) The application shall contain the duties or functions which the applicant proposes to perform if registered, if different from those functions promulgated by the National Board of Medical Examiners as appropriate for the certification examination for Physician's Assistants.

C. Requirements for Non-Certified Applicants

(1) Non-certified applicants shall make application for registration on a form provided by the Board. The application shall contain the information required under Subsections A and B(1) and B(3) of this regulation.

(2) The application shall be accompanied by supporting documents, such as transcripts of grades, diplomas, certificates, or degrees, as the Board may require.

Petitioner's argument that we should ignore the separate statutory classifications that Maryland has enacted for the positions of physician's assistant and practical nurse on the ground that both fields are the same in terms of job function and responsibility is without merit. A practical nurse, under Maryland law—

is a recognized member of the health professional team performing an integral part of nursing. *"Licensed practical nursing"* means the performance of the following acts in a team relationship with other licensed health professionals:
(i) The administration of treatment and medication as prescribed.
(ii) Aiding in rehabilitation.
(iii) Promoting preventive measures in community health.
(iv) Giving counsel.
(v) Acting to safeguard life and health.
(vi) Teaching and supervising commensurate with the nurse's education and demonstrated competencies.
(vii) The performance of additional acts authorized by the Board of Examiners of Nurses through its rules and regulations. [Md. Ann. Code art. 43, sec. 291 (Supp. 1978)]

A physician's assistant as defined by the NCCPA:

perform[s] an evaluative function; they are capable of eliciting a complete history and performing routine physical examinations on all types and ages of patients and across all body systems. Additionally, PA's can order non-life-threatening diagnostic and test procedures, and can interpret results and isolate abnormalities. They are also trained to carry out specific management regimens under physician direction and to take necessary, immediate action to preserve life in emergency situations. They often perform minor surgical services (e.g., removal of foreign objects from eyes, minor sutures, etc.). It is important to emphasize that PA's are *not* independent; they must work under physician supervision, and the identified physician-supervisor is clearly responsible for the PA's professional activity. [Information Bulletin from NCCPA to Applicants (1976 ed.)]

In addition, a physician's assistant is defined in the regulations promulgated pursuant to Md. Ann Code art. 43, sec. 122(b)(6) (Supp. 1978) as follows:

"Physician's Assistant" means an individual other than a licensed physician who, after adequate training and registration by the Maryland State Board of Medical Examiners, may perform certain duties that would otherwise be performed by persons licensed to practice medicine.

---

(3) The Board shall establish and conduct examinations it considers appropriate to determine that the applicant is qualified and competent to perform, under supervision, the duties or functions for which the applicant is to be registered.

Physician's assistants must comply with a number of registration and certification requirements under the auspices of the Maryland State Board of Medical Examiners. They are in no way subject to the jurisdiction or control of the Maryland Board of Nursing Examiners. Md. Ann. Code art. 43, sec. 122(b)(6) and (d) (Supp. 1978).

Perhaps the most telling evidence that the two fields are not the same was the testimony of petitioner's husband concerning the duties petitioner engaged in as a physician's assistant upon her graduation from Johns Hopkins. Petitioner, we were told, performed minor surgery, made preliminary diagnoses and performed physical examinations for Sadowsky Surgical Associates. These duties, we think, go beyond the normal realm of practical nursing duties.

Accordingly, we conclude that petitioner's educational expenditures qualified her for the new trade or business of physician's assistant, even if she were still in the practical nursing profession. Moreover, since we have determined that petitioner in fact was not in any trade or business while attending Johns Hopkins, her transportation expenses are not deductible. See *Zimmerman v. Commissioner*, 71 T.C. 367 (1978).

To reflect concessions made by both parties,

*Decision will be entered under Rule 155.*