WILLIAM M. GOLDSTEIN AND JUDITH GOLDSTEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goldstein v. Commissioner
Docket No. 3050-79.
United States Tax Court
T.C. Memo 1981-96; 1981 Tax Ct. Memo LEXIS 652; 41 T.C.M. (CCH) 1016; T.C.M. (RIA) 81096; February 26, 1981. *652 Held: Petitioner Judith Goldstein was not in the trade or business of teaching in 1973 and 1974, and so educational expenses incurred by her are not deductible. Sec. 162, I.R.C. 1954. William M. Goldstein, pro se. Melvin E. Lefkowitz, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax against petitioners for 1973 and 1974 in the amounts of $ 1.073 and $ 1,238, respectively. The issue for decision [1] is whether petitioners may deduct under section 162[2] educational expenses incurred by petitioner Judith Goldstein. *653 FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioner William M. Goldstein resided in Wayne, Pennsylvania, and petitioner Judith Goldstein (hereinafter sometimes referred to as "Judith") resided in Devon, Pennsylvania. Judith obtained her bachelor's degree in hotel administration in 1957 from Cornell University. From July 1958 to June 1959, she attended Harvard University's Gradute School of Education (hereinafter referred to as "Harvard GSE") for the purpose of obtaining her master's degree in education. In the spring term of 1959, as a required part of her program at Harvard GSE, Judith taught sixth grade (all subjects) at Thoreau School in West Concord, Massachusetts. For this teaching, she was paid a salary of $ 1,700 by the Concord, Massachusetts, School District. Upon completion of her program at Harvard GSE Judith was certified as a teacher by the Massachusetts Department of Education. She entered into a three-year contract to teach in the Concord school system, beginning in September 1959. In July 1959, before beginning *654 to teach under the contract, she resigned because of the impending birth of her first child. In the summer of 1959, Judith expected to return to teaching in the future, the time to depend on the size of her family. She intended to return as soon as her youngest child would be in school full time. Judith did not participate in any further teaching activity until 1969. During this period she devoted her time to raising petitioners' children and maintaining petitioners' household. In 1969, Judith became involved in volunteer teaching programs. From 1969 through 1972, Judith was chairperson of the Junior Great Books Program (hereinafter sometimes referred to as "the Books Program") for New Eagle Elementary School, which was attended by her children. In the Books Program, she spent six to eight hours on preparation and two hours on discussion every other week from November through May. The materials involved in this program were supplied by the University of Chicago, which developed and ran the program. Judith was not compensated for this activity. From 1970 through 1972, Judith was a regular volunteer (during the first two years) and cochairperson (during the last year) *655 of the Art Goes to School Program (hereinafter sometimes referred to as "the Art Program") in the Tredyffrin-Easttown School District (hereinafter referred to as "the T-E School District"). The Art Program involved a ten-session training period in the fall and classroom participation from January through May. Judith visited eight T-E School District elementary schools in this program; her classroom participation involved one session a week lasting from two to three hours. Judith incurred no expenses and received no compensation for this activity. During 1970 through 1973, Judith was one of 15 to 20 volunteers involved in the Museum Goes to School Program (hereinafter sometimes referred to as "the Museum Program"). She was assistant to the chairperson of the Museum Program. In this program, she instructed in grades four through twelve in schools located in the Greater Philadelphia area, including the inner city. She taught two or three times a month for half a day on each assignment. The Museum Program used original, insured artifacts on loan from the Philadelphia Museum of Art. Judith assisted with scheduling and coordinating training sessions with the museum. During the *656 fall, Judith participated in six three-hour training sessions at one or two of which she presided. Judith was reimbursed for her expenses in this activity. During 1970 through 1973, Judith was also a volunteer substitute Sunday School teacher at the Metropolitan Congregation of Rodeph Sholom in Philadelphia. She was paid only twice for her Sunday School teaching services; she requested pay on those days primarily because none of the other teachers of the grade which she was teaching was present. The T-E School District, in which the Books Program and the Art Program were conducted, did not require that a volunteer have teaching experience or qualifications as a teacher. Many of the volunteers in the programs in which Judith participated had been teachers, and some had not; for the latter there was a training program for those in the Museum Program. In 1972, Judith became interested in obtaining a Master of Science degree in Education, specializing in social studies, from the University of Pennsylvania (hereinafter referred to as "the U of P"). The U of P program was designed to qualify Judith to become a high school social studies teacher. Judith met with George Garwood *657 (hereinafter referred to as "Garwood"), Superintendent of the T-E School District, in connection with the process of applying to the U of P. Judith indicated to Garwood her desire to become a social studies teacher specializing in East Asian studies so that she could teach at Conestoga High School in Berwyn, Pennsylvania. The Master of Science program at the U of P required a teaching internship. Garwood arranged a nonpaying internship whereby Judith would teach under supervision at Conestoga High School. During her internship, Judith taught the following three courses: East Asian studies, political science, and regional affairs. Judith was told, before she entered the Master of Science program and before she started her internship, that Garwood could not guarantee employment for her after the internship but that if a position opened in the Social Studies Department, she would be the first to be considered. Judith understood Garwood to tell her that she would have to be certified as a teacher in Pennsylvania in order to be considered, but that he would be happy to have her as a part-time teacher of senior electives if she were certified. To be certified in Pennsylvania, a *658 teacher must have completed a course in Pennsylvania State history and a course in audio-visual aids. As part of her program at the U of P Judith took these courses, one at the U of P and one at Villanova University. A budgetary crisis resulted in tenured teacher whose courses had been eliminated taking over the Conestoga High School courses Judith had taught during her internship. Upon finding that she could not get a job at Conestoga High School, Judith sent out printed resumes to 40 different school districts in the Greater Philadelphia area. Only the Lower Merion School District offered her a job, in late summer of 1976, by which time she had already found employment at the U of P as an Associate Development Officer, a fund-raiser. Judith was employed at this job from August 2, 1976, until at least the time of the trial in the instant case. As of the time of the trial, Judith was in a U of P Ph.D. program in educational leadership, had recently sought employment as an administrator in several schools, had been offered a position in one of these schools, and was not sure what she was going to do. Judith incurred tuition expenses in 1973 and 1974 at the U of P and Villanova *659 University, while obtaining her Master of Science degree, which were deducted on petitioners' 1973 and 1974 income tax returns in the respective amounts of $ 2,146 and $ 2,476. Before 1973, Judith had met the minimum educational requirements to be a teacher and her courses at the U of P did not qualify her for a new trade or business. OPINION Petitioners maintain that Judith became a teacher in 1959 and continued in that trade or business through 1974. They argue in the alternative that, if Judith is considered to have left the profession when she stopped teaching in 1959, then she reentered the profession in 1969 through active teaching in volunteer programs. Respondent argues that Judith was not engaged in the trade or business of teaching from July 1959 through December 1974, and in particular that her volunteer activities during 1969 through 1973 did not constitute carrying on a trade or business. We agree with respondent. Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 of the Internal Revenue Code of 1954 (sec. 262 [3]). Education expenses ordinarily are regarded as personal. See, e.g., Welch v. Helvering, 290 U.S. 111, 115-116 (1933). *660 However, section 162(a)[4]--which is in chapter 1--expressly provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. As section 162(a) has been interpreted, educational expenses may constitute deductible trade or business expenses if they maintain or improve skills required in the taxpayer's employment or other trade or business. See, e.g., section 1.162-5(a), Income Tax Regs.[5]
*661 The parties' dispute, as we see it, is as to whether Judith was in the trade or business of teaching in both 1973 and 1974 (as petitioners maintain) or in neither of these years (as respondent maintains). In order for an educational expense to be deductible as a business expense, the expense must relate to activities which amount to the present carrying on of an existing business. Reisinger v. Commissioner, 71 T.C. 568, 572 (1979); see Koons v. Commissioner, 35 T.C. 1092, 1100 (1961). Nevertheless, although currently unemployed, a taxpayer can still be engaged in a trade or business if he or she was previously involved in and actively seeks to return to that trade or business. Haft v. Commissioner, 40 T.C. 2, 6 (1963); see Reisinger v. Commissioner, 71 T.C. at 572. Whether activities constitute the carrying on of a trade or business (within the meaning of section 162(a)) is a question of fact. Higgins v. Commissioner, 312 U.S. 212, 217 (1941); Reisinger v. Commissioner, 71 T.C. at 572; Barnett v. Commissioner, 69 T.C. 609, 613 (1978); Corbett v. Commissioner, 55 T.C. 884, 887 (1971). *662 The burden of proof is on petitioners. Welch v. Helvering, 290 U.S. at 115; Reisinger v. Commissioner, 71 T.C. at 574; Barnett v. Commissioner, 69 T.C. at 613; Rule 142(a), Tax Court Rules of Practice and Procedure.
We may assume, without deciding, that Judith was in the trade or business of teaching in the spring term of 1959. When she ended her paid school teaching, she had at most an intention to return to teaching at some time in the distant future. Because of her pending family responsibilities, not only did she not seek paid employment ( Reisinger v. Commissioner, 71 T.C. at 573; Corbett v. Commissioner, 55 T.C. at 888), but she gave up a three-year paid teaching contract. From that time through the end of the period before the Court, she did not paid teaching, except for one or two occasions at her religious congregation's Sunday school. Although in 1972 she had formed the definite intention of returning to teaching and thereupon initiated a plan to carry out that intention in a prompt and orderly manner, she had not returned to paid teaching by the end of 1974. Indeed, she had not *663 returned to paid teaching by the time of the trial in the instant case. We do not regard Judith's volunteer work in the 1969 to 1973 period as the resumption of the trade or business of teaching. In that volunteer work she was not holding herself "out to others as engaged in the selling of goods or services." Snow v. Commissioner, 416 U.S. 500, 502-503 (1974). The record in the instant case is not consistent with the requisite profit motive for Judith's volunteer work to constitute a trade or business. See, e.g., White v. Commissioner, 23 T.C. 90, 94-95 (1954), affd. 227 F.2d 779, 780 (CA6 1955). We note (1) Judith's nonbusiness reasons for leaving the trade or business of teaching in 1959, (2) her absence of an intent in 1959 to promptly return to paid teaching, (3) her long absence from paid teaching, and (4) her long absence of efforts to seek paid employment as a teacher. We conclude that, even if Judith had been in the trade or business of being a teacher in the spring of 1959, she left that trade or business. We conclude that her volunteer work in 1969 through 1973 did not constitute a reentry into such a trade or business. *664 We conclude, then, that in 1973 and 1974 Judith was not in the trade or business of being a teacher. At best, Judith's education expenses were incurred preparatory to a resumption of her former trade or business, and are not currently deductible. Wyatt v. Commissioner, 56 T.C. 517, 520-521 (1971). Petitioners assert that Judith was "qualified as a 'teacher' in 1959 and remained a member of that profession through 1974". However, the issue is not whether Judith was a qualified member of the teaching profession, but whether she was engaged in the trade or business of teaching. Membership in a profession does not necessarily mean that one is carrying on the trade or business of that profession. Reisinger v. Commissioner, 71 T.C. at 572; Wyatt v. Commissioner, 56 T.C. at 520. Viewing petitioners' assertion as being that Judith was in the trade or business of teaching from 1959 through 1974, we must conclude that such an assertion is contrary to the record. Petitioners cite several cases as indicative of situations where deductions for educational expenses were allowed to a taxpayer who had stopped teaching for some period *665 of time. All of those cases are distinguishable from the instant case. In those cases, beginning immediately after the taxpayers left their jobs, they actively sought paid employment or pursued job-related education. [6]
*666 Petitioners urge the Court to recognize that women teachers frequently cease active teaching for many years to raise children before returning to teaching and argue that an arbitrary rule based on time periods should be rejected, at least where the taxpayer, prior to incurring the expenses in question: (1) always intends to teach again; (2) resigns for personal reasons; (3) enters no other business or profession; (4) participates extensively as a teacher in volunteer programs for four years; (5) actually interns as a high school social studies teacher; (6) actively seeks employment as a teacher upon completion of her studies; and (7) has a reasonable expectation of teaching at that time. They ask the Court to consider "the Treasury's clear policy of encouraging continuing education by teachers" and they state that "[r]ecognizing that many women situated similarly to Judith will be returning to the classroom the Court should allow the deductions claimed in this case and thereby encourage such teachers to maintain and improve their skills in this most valuable profession." As petitioners are well aware, the Congress has not singled out teachers for special rules as to whether *667 they are in trades or businesses (within the meaning of section 162(a)), the relevant Treasury Regulations afford petitioners no help, and no warrant is shown for this Court to create a special rule for Judith because she is a woman (see, e.g., Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702 (1978); Moritz v. Commissioner, 469 F.2d 466 (CA10 1972), revg. 55 T.C. 113 (1970)) or has been a housewife (see Kizer v. Commissioner, 13 B.T.A. 395 (1928)). The claim petitioners make to us, to the extent it calls for constitutionally permissible discrimination (see, e.g., Bryant v. Commissioner, 72 T.C. 757, 764 (1979)) in favor of teachers over philosophers, plumbers, and tax lawyers, may well be made to the Congress; the state of the existing law does not authorize us to grant such a claim. On the one issue before us we hold for respondent. Decision will be entered for the respondent. Footnotes
1. In their petition, petitioners claimed reasonable counsel fees. We take it that this claim has been abandoned, since it is not discussed on brief. In any event, see Toner v. Commissioner,629 F.2d 899 (CA3 1980); Key Buick Co. v. Commissioner,68 T.C. 178 (1977), affd. 613 F.2d 1306↩ (CA5 1980). 2. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In Genera.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ↩
5. Sec. 1.162-5 Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.↩
6. In Ford v. Commissioner, 56 T.C. 1300 (1971), affd. per curiam 487 F.2d 1025 (CA9 1973), the taxpayer left his teaching position for university study in Norway, made himself available for substitute teaching and kept active contacts with the teaching community during his study. At the end of his one year of study, he returned to full-time teaching. In Furner v. Commissioner, 393 F.2d 292 (CA7 1968), revg. 47 T.C. 165 (1966), the taxpayer stopped teaching for one year to pursue full-time study directly connected with improving her teaching skills. At the end of her one year of study, she returned to full-time teaching. Haft v. Commissioner, supra, involved neither a teacher nor educational expenses. There, the taxpayer, in the costume jewelry business, lost his position but actively sought a new source of merchandise to sell and kept customer and buyer contacts in order to be able to resume work promptly. Finally, he formed a company under his own name to manufacture and sell costume jewelry. In Zimmerman v. Commissioner, 71 T.C. 367 (1978), affd. without published opinion 614 F.2d 1294 (CA2 1979), respondent conceded that the taxpayer was in the trade or business of teaching (71 T.C. at 369↩), and so this issue was not before the Court.