MORRIS I. COHEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cohen v. Commissioner
Docket No. 7078-82.
United States Tax Court
T.C. Memo 1984-237; 1984 Tax Ct. Memo LEXIS 435; 48 T.C.M. (CCH) 5; T.C.M. (RIA) 84237; May 3, 1984. Morris I. Cohen, pro se. Cynthia J. Olson, for respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioner's 1978, 1979, and 1980 Federal income taxes as follows: Year
Deficiency
1978
$1,482.00
1979
53.00
1980
3,927.90
On April 20, 1983, respondent filed an Amendment to Answer, in which he redetermined petitioner's deficiencies as follows: Year
Deficiency
1978
$1,150.00
1979
1,455.00
1980
3,927.90
The issues for decision [1] are: (1) whether petitioner is entitled to various deductions which he claimed as business expenses during the years in issue; and (2) whether petitioner is entitled to a net operating loss carryover from 1977 claimed on his 1978 Federal income tax return. An issue that must be decided prior to addressing the net operating loss carry-over *438 question is whether to grant respondent's Motion For Leave To File Amendment To Answer To Conform The Pleadings To The Proof. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Aurora, Colorado, at the time the petition was filed in this case. [2]
From 1942 until 1963, petitioner was employed by the United States Department of Labor, Wage and Hour Division, as an investigator. In 1963, at 48 years of age, petitioner retired on disability. As a disability retiree, petitioner received from the Federal Civil Service disability payments of $7,911.00, $8,634.00, and $9,756.00 in 1978, 1979, and 1980, respectively. In 1963, petitioner enrolled in Indiana University Law School. In February 1967, petitioner was graduated from that law school, and in May 1967, petitioner took and passed the Indiana *439 State Bar Examination. As of the date of trial, petitioner had not been admitted to the bar of any other state. In 1967, after having been admitted to the Indiana State Bar, petitioner endeavored to practice law in Indianapolis as a sole practioner.Between 1967 and 1970, petitioner represented two clients.One client paid petitioner a fee of $5,000, [3] and the other client paid petitioner an amount unspecified in the record. Between 1971 and the years in issue, petitioner represented a woman in a divorce case, and charged her $400 for his services. It is unclear, however, whether petitioner was able to collect for his services. Up until approximately 1972 or 1973, petitioner was referred a small number of clients by the Indianapolis Bar Association. However, any income petitioner received through these referrals was minimal, and eventually petitioner's referral business ceased. On a few occasions, apparently between 1967 and the early 1970's, petitioner applied for positions as an attorney with several agencies, but without success. By approximately 1973, when petitioner's referral business ended, it appeared to *440 petitioner that "all the doors were closed" on his establishing a successful law practice. In fact, petitioner testified that "the only reason [he] was able to make it was because of [his] annuity." In 1978, petitioner traveled to California, apparently with the idea that he might attempt to practice law in that jurisdiction. However, petitioner soon abandoned that idea, and returned to Indianapolis. Since approximately 1967, petitioner maintained a listing as an attorney in the Indianapolis telephone directory, and maintained a current subscription to the Burns Indiana Annotated Statutes. During the years in issue, on Schedule C attached to his returns, petitioner deducted the cost of these items plus other expenses.The majority of the other expenses listed are for contributions to various charitable organizations, interest, taxes, car expenses, an expense for maintaining an office in his home, and various professional and legal dues. Petitioner also deducted expenses he incurred for filing fees in commencing litigation in Federal district and appellate court. Petitioner was the plaintiff in these suits. In 1978, petitioner also deducted on Schedule C $2,280 as a moving *441 expense representing the cost of his trip to California and the cost of moving from Indianapolis to Speedway, Indiana. During the years in issue, petitioner reported no income from his law practice. On Schedule C, petitioner reported net losses in 1978, 1979, and 1980 of $13,337, $8,025, and $9,730, respectively. Also in connection with his law practice, petitioner reported a net operating loss (NOL) carryover from 1977, claimed on his 1978 return, of $19,912. In addition to Schedule C, petitioner attached to each of his returns a summary of the transactions which comprised his income tax liability.Petitioner captioned this summary "Statement of Operating Loss for Year." [4]
*442 In his notice of deficiency, respondent disallowed petitioner's Schedule C losses, but not his NOL carryover from 1977. The only other adjustments listed in the notice of deficiency pertained to petitioner's disability exclusion. At trial, which was held on May 10, 1983, respondent did not raise as an issue whether petitioner was entitled to a NOL carryover. In a Motion For Leave To File Amendment to Answer To Conform The Pleadings To The Proof (motion), filed on July 8, 1983, respondent moved pursuant to Rule 41(b) [5] for leave to raise as an issue whether petitioner is entitled to a NOL carryover deduction. In his motion, to support his position, respondent asserted the following: The issue regarding the net operating loss carryover from 1977 was tried by express or implied consent of the parties. The respondent's adjustments to the petitioner's pension income and exclusion, as set forth in the notice of deficiency, were based on the figures reported by petitioner on the Forms 1040 filed for the years at issue. At the trial of this case, the petitioner based his arguments on this issue on the net operating loss statements attached to his Forms 1040. Thus, the petitioner *443 has put at issue the correctness of the net operating loss statements attached to his return. OPINION The first issue for decision is whether petitioner is entitled to deduct the expenses which he reported on Schedule C attached to his returns. Petitioner claims that he is entitled to those deductions because he was in the trade or business of practicing law. Respondent, on the other hand, argues that petitioner is not entitled to deduct these expenses for several reasons; the primary one being that petitioner's activities as an attorney were not engaged in for profit within the meaning of section 183. [6]
Section 183(a) provides the general rule that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Section 183(b)(1) provides that deductions which would be allowable without *444 regard to whether the activity is engaged in for profit shall be allowed, and section 183(b)(2) provides that deductions which would be allowable only if the activity is engaged in for profit shall be allowed, but only to the extent that the gross income from the activity exceeds the deductions otherwise allowable under section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as: SEC. 183(c). Activity Not Engaged in for Profit Defined. -- For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. The standard to be applied in section 183 cases is whether the taxpayer engaged in the activity with an honest and bona fide objective of making a profit. Dreicer v. Commissioner,78 T.C. 642 (1982), affd. without opinion, 702 F.2d 1205 (D.C. Cir. 1983). Whether this standard is met presents a question of fact to be determined from all the evidence. Petitioner has the burden of proof on this issue. Golanty v. Commissioner,72 T.C. 411, 426 (1979), *445 affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). A taxpayer's declaration of his motive to make a profit is not controlling; greater weight must be given to objective facts. In prior cases, to determine whether the taxpayer engaged in the activity with the objective of making a profit, this Court has considered the factors listed in section 1.183-2(b), Income Tax Regs.
Applying these relevant factors to the instant case, we believe that petitioner's legal practice was not an activity engaged in for profit. For example, petitioner's activities did not indicate a bona fide objective of making a profit from the practice of law. There is no evidence that he made any effort during the years at issue to make it known that he was an attorney available to represent clients. [7] He apparently did not "hang out his shingle", did not attend meetings of attorneys, spent no time around the courthouse except on his own affairs, and did not participate in community affairs where he could come in contact with potential clients or client referrals. Petitioner's name in the telephone directory indicated that he was an attorney, but he was not listed as an attorney in the *446 yellow pages of the directory. The only office petitioner maintained was allegedly in his home. He apparently had no office equipment, supplies, or furnishings that would normally be present in a law office. So far as the evidence reveals the only legal books he had were the Indiana Annotated Statutes which probably were used for his personal activities more than his legal pursuits. Petitioner had no supporting staff and there is no evidence that petitioner made an effort to keep up with the law. There is no indication that petitioner maintained any books or records concerning his legal activities. Section 1.183-2(b)(1), Income Tax Regs.
Petitioner also did not establish that he expended much time and effort in carrying on legal activities.Section 1.183-2(b)(3), Income Tax Regs. On the contrary, the record indicates that between the time petitioner was admitted to the bar, 1967, and, the last year at issue, 1980, petitioner represented three clients -- each for a singular matter -- plus a handful of individuals *447 who were referred by the Indianapolis Bar Association in the early years. And there is no evidence in the record that petitioner did legal work for any clients during the years before us or spent any time on legal work, and he received no income from the practice of law during those years. Also, petitioner sustained losses during each of the years in issue of $13,337, $8,025, and $9,730, and, since his testimony indicated that he received, at a maximum, not more than $6,000 in legal fees since he was admitted to practice, it is quite likely that he suffered losses in all prior years. A record of such losses over so many years is persuasive evidence that the petitioner did not have the requisite profit objective. Cf. Golanty v. Commissioner,supra at 427. In sum, we agree with respondent that petitioner's so-called legal activities during the years in question were not engaged in for profit within the meaning of section 183. Petitioner may have studied law in hopes that he could make a profit from the practice of law. But, it is evident that after a few years it appeared to petitioner that "all doors were closed" on his establishing a successful law practice, *448 as he testified. We believe petitioner thereafter relied on his disability annuity income to support himself rather than the practice of law and that he made no genuine effort to earn income or make a profit out of the practice of law. Section 1.183-2(b)(8), Income Tax Regs. There is no evidence that any of the business expenses claimed by petitioner on his tax returns were in any way directly related to an activity that could be classified as the business of practicing law. Merely being admitted to practice law and retaining membership in good standing in the profession does not constitute the business of practicing law. Owen v. Commissioner,23 T.C. 377, 381 (1954). We do not believe petitioner is entitled to deduct one-half of his living expenses as business expenses in the practice of law. Moreover, section 262 precludes petitioner from deducting personal expenses, such as filing fees in connection with litigation in which petitioner was a party. Petitioner also deducted expenses for items (e.g., charitable contributions, interest, taxes) which would otherwise be allowed as itemized deductions. Section 183(b)(1). However, the total amount petitioner expended *449 on these items is below the zero bracket amount necessary for single taxpayers. Section 63(d). On his 1978 return, petitioner also deducted $1,805 for the cost of his trip to California. Petitioner contends that this expense is deductible as a job-hunting expense. This Court has held that expenses incurred in seeking new employment in the same trade or business are deductible under section 162. See Cremona v. Commissioner,58 T.C. 219 (1972). However, expenses incurred in seeking or investigating a new trade or business are not deductible under section 162(a). Dean v. Commissioner,56 T.C. 895 (1971). Petitioner offered no convincing evidence or details to support his claim that he went to California to establish a legal practice there. His testimony indicated that he had a brother living in California and that his trip was more to visit his brother than to seek new employment practicing law.
Furthermore, because we have held that petitioner's activities were not engaged in for profit during the years in issue and further since the record shows that petitioner abandoned any previous practice of law, petitioner was not in the trade or business *450 of practicing law within the meaning of section 162(a) at the time of the trip. See section 183(c). Consequently, even assuming that petitioner did travel to California to ascertain the possibility of practicing law in that state, his trip would be to investigate employment possibilities in a new trade or business. Accordingly, petitioner's job-hunting expenses are not deductible. See and compare Haft v. Commissioner,40 T.C. 2, 7 (1963); Reisinger v. Commissioner,71 T.C. 568, 574 (1979). Petitioner also deducted on his 1978 return $475 representing the cost of his moving from Indianapolis to Speedway, Indiana. Petitioner did not establish, however, that after he arrived at Speedway he was a full-time employee or performed services as a self-employed individual on a full-time basis as required by section 217(c). Accordingly, petitioner is denied this deduction. The final issue for decision is whether petitioner is entitled to a NOL carryover from 1977 claimed on his 1978 Federal income tax return. This issue was not raised by respondent in the pleadings, nor at trial. Respondent, however, argues that he should be allowed to amend the *451 pleadings to conform to the proof offered at trial. Rule 41(b)(1) permits an amendment of the pleadings to conform them to the evidence when issues not previously raised were tried with the express or implied consent of the parties. See, e.g., Llorente v. Commissioner,74 T.C. 260, 269 (1980), revd. in part and remanded, 649 F.2d 152 (2d Cir. 1981) (new issue not raised in pleadings decided by this Court because parties argued issue at trial). Conversely, this Court will not consider issues that have not been pleaded and have not been expressly or implicitly consented to be the parties. Markwardt v. Commissioner,64 T.C. 989, 997 (1975); Estate of Mandels v. Commissioner,64 T.C. 61, 73 (1975). [8]
Respondent contends that petitioner raised the NOL issue at trial, and that we should therefore decide this issue. To support his position, respondent argues in his motion the following: the notice of deficiency made adjustments in petitioner's pension income and exclusion; to refute these adjustments, petitioner based his arguments "on the *452 net operating loss statements attached to his Forms 1040. Thus, the petitioner has put at issue the correctness of the net operating loss statements attached to his return." The short answer to respondent's contention is that the document attached to petitioner's returns was a "Statement of Operating Loss for Year," which was simply a summary of information concerning all the items which comprise petitioner's tax liability. It does not pertain solely to the NOL issue. Furthermore, respondent did not question the correctness of the figures used by petitioner as the net operating loss carryover from 1977 in the notice of deficiency. No mention was made of it in respondent's answer and neither pary mentioned it or presented any evidence with respect to it at trial. In sum, respondent in neither the pleadings nor at trial raised the 1977 NOL carryover issue. Petitioner was not aware, and could not have been aware, that this was an issue at trial. Consequently, petitioner cannot be held to have expressly or impliedly consented to the trying of such issue simply because he attached to his returns a statement summarizing items listed on his return. See also, Markwardt v. Commissioner,supra at 998. *453 Respondent's position is beyond the scope of Rule 41(b) and this Court's interpretation of that rule. Therefore, respondent's motion must be denied. Decision will be entered under Rule 155.
Footnotes
1. Also at issue was whether petitioner improperly excluded twice from income the amount of his disability exclusion provided by section 105(d) of the Code. The parties resolved this issue subsequent to trial by entering into a Stipulation on June 22, 1983.↩
2. Petitioner moved to Colorado from Indiana on May 6, 1981.↩
3. Based on petitioner's uncorroborated testimony.↩
4. This is a copy of the summary petitioner attached to his 1978 return. Statement of Operating Loss for Year 1978 Income
↩
Income from Interest on Savings, Interest on Bonds
$ 6,979.00
and United States Government Bonds and Notes
(Schedule B)
Excess of Disability Retirement (Sick Pay) over
$5,200.00 = $2,711.00 ($7,911.00 total)
2,711.00
$9,690.00
Deductions
Net Operating loss carryover from 1977
$19,912.00
Net Loss from Business
13,337.00
Personal Exemption
750.00
Zero Bracket Amount
2,200.00
$36,199.00
Deductions exceed income by
$26,509.00
Adjustments to Determine Operating Loss
Deductions in Excess of Income
$26,509.00
Eliminate Operating Loss Carryover
$19,912.00
for 1977
Eliminate Personal Exemption
750.00
Zero Bracket Amount is Less than
00.00
total interest income
Net Loss
$19,162.00
Net Operating Loss for 1978
Deductions in Excess of Income
$26,509.00
Loss for 1978
19,162.00
Net Operating Loss
$ 7,347.00
Total Carryback, 1977
$19,162.00
1978
7,347.00
Total Carryback
$26,509.00
5. All references to "Rules" shall refer to the Tax Court Rules of Practice and Procedure.↩
6. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.↩
7. We recognize that during the years in issue it was considered unethical for an attorney to advertise -- but there were other ways to establish an active practice.↩
8. See also Lepson v. Commissioner,T.C. Memo. 1982-304↩.