GEORGE A. BAIST and JANICE BAIST, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baist v. Commissioner
Docket No. 43124-86
United States Tax Court
T.C. Memo 1988-554; 1988 Tax Ct. Memo LEXIS 583; 56 T.C.M. (CCH) 778; T.C.M. (RIA) 88554; December 6, 1988. Patrick J. Lane, for the petitioners. Matthew I. Root, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a deficiency of $ 962 in petitioners' joint Federal income tax for the calendar year 1983. After concessions, the sole issue for decision is whether petitioners are entitled to a deduction for expenses incurred by Janice Baist in obtaining a Bachelor of Arts degree in Education. The case was submitted on the basis of a stipulation of facts. Petitioners are husband and wife. They filed a joint Federal income tax return for the calendar year 1983 with the Internal Revenue Service Center in Andover, Massachusetts. At the time the petition herein was filed, petitioners resided in Sodus, *584 New York. Petitioner Janice Baist (hereinafter sometimes referred to as petitioner) began taking college courses for credit in 1961. She attended a number of different colleges intermittently for the next 23 years until May 1984 when she was awarded a Bachelor's degree in Education by Nazareth College in Rochester, New York. Petitioner was employed by the Rochester Catholic Diocese (the Diocese) as a fourth grade teacher at St. Cecilia's School from June 1963 to 1966 when she ended her employment in order to raise her children. During the period that petitioner taught at St. Cecilia's School, the Diocese did not require its teachers to be certified under New York State Education Law and in fact petitioner was not so certified. Sometime in the 1970s the Diocese altered its hiring requirements for teachers. Thereafter, it would not hire, retain, or place individuals for teaching unless that person had been certified as a teacher under New York State Education Law. After ending her employment at St. Cecilia's school in 1966, petitioner was not employed outside of her home for approximately seven years. In 1973 she obtained employment with the federally funded Head Start program *585 as a secretary, bookkeeper, and substitute teacher. Petitioner was not certified nor was she required to be certified under New York State Education law to work as a substitute teacher in the Head Start program. The record does not disclose whether she served as a substitute teacher for any appreciable period or periods of time. Petitioner left the Head Start program in June 1977. In September 1977 after a brief period of unemployment, petitioner was employed as a tutor with the federally funded Wayne Finger Lakes Tutorial Program in Sodus High School. She tutored students but was not permitted to plan lessons or evaluate students. She stayed with the tutorial program until June 1979 when she went to work for Sodus Central High School [1] as a teaching assistant. As a teaching assistant, petitioner taught students who had learning disabilities, but she was not permitted to plan lessons, evaluate students, or issue grades. Under New York State law, teaching assistants were authorized to act only under the general supervision of a licensed or certified teacher. *586 See N.Y. Ed. Law section 3009 (McKinney 1981). [2] The parties have stipulated that "[a] certified teacher was required to be in the classroom at all times with [her] as she was a teaching assistant". *587 As a teaching assistant, petitioner was required to, and in fact obtained on September 1, 1980, a temporary license from the New York State Education Department. On September 1, 1981, she obtained a continuing certificate as a teaching assistant. The requirements for obtaining the continuing certificate were six credit hours in education and one year of employment with the temporary license. Petitioner worked as a teaching assistant for Sodus Central High School until 1984. While thus employed as a teaching assistant petitioner took college courses from June 1981 until May 1984 and earned 67 credit hours. And, as previously indicated, she obtained a Bachelor of Arts degree in Education in May 1984. Upon graduation in May 1984, petitioner was granted Certificates of Qualification in nursery, kindergarten, grades 1-6, and special education. Upon receipt of these provisional certificates petitioner was a fully certified teacher under the New York Education Law, and fully qualified to perform all teaching duties in the areas for which she was granted provisional certificates. In September 1984 petitioner commenced employment as a full-time special education teacher in Sodus *588 Central School District. As such, she had full responsibility for all aspects of teaching, including planning, teaching, and evaluation. In particular, petitioner was responsible for preparing individual educational plans for each of the disabled children that she was working with. On their 1983 income tax return, petitioners reported $ 20,387 as income and deducted $ 3,022 as employment related educational expenses and $ 1,722 as transportation expenses relating to the education. In his notice of deficiency, the Commissioner disallowed the $ 3,022 deduction for educational expenses and the $ 1,722 deduction for transportation expenses relating to the education on the ground that "the [educational] expenses were primarily for personal purposes or to fulfill general education ambitions" and the transportation expenses had not been shown to be an "ordinary and necessary business expense". At issue is whether petitioner's 1983 educational expenses are deductible under section 162(a) of the Code as "ordinary and necessary business expenses paid * * * in carrying on any trade or business". More than 50 years ago, in a case not involving educational expenses, the Supreme Court *589 recognized that it would be a futile task "to attempt to harmonize" the large number of factually diverse cases in the Federal Courts dealing with the one comparatively narrow area of trade or business expenses then before the Court. Welch v. Helvering,290 U.S. 111, 116 (1933). And the Court noted further (p. 116) that such cases "involve the appreciation of particular situations, at times with borderline conclusions". Similarly, the decided cases involving educational expenses have been numerous and not always easily reconcilable with one another. In a field such as this it would seem that regulations governing specific types of factual situations relating to educational expenses would be particularly appropriate. Although there have been regulations in effect for many years relating generally to ordinary and necessary business expenses, it was not until 1958 that provisions were adopted that dealt specifically with educational expenses. [3] In 1967, these educational expense regulations were revised, [4] and in particular the revised regulations made irrelevant the subjective test that characterized the 1958 regulations. The 1967 regulations are still in effect *590 today and are applicable to petitioner's 1983 expenses here in controversy. They provide in part as follows: Sec. 1.162-5 Expenses for education. (a) General Rule.Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education -- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. (b) Nondeductible educational expenditures -- (1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business *591 expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. * * * (ii) The minimum educational requirements for qualification of a particular individual in a position in an educational institution *592 is the minimum level of education (in terms of aggregate college hours or degree) which under the applicable laws or regulations, in effect at the time this individual is first employed in such position, is normally required of an individual initially being employed in such a position. * * * * * * (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. * * * *593 The role of the judiciary in cases of this sort begins and ends with assuring that the regulations fall within the Secretary's authority to implement the congressional mandate in some reasonable manner. United States v. Correll,389 U.S. 299, 307 (1967). The validity of these regulations has been upheld, Weiszmann v. Commissioner,52 T.C. 1106, 1111-1112 (1969), affd. 443 F.2d 29 (9th Cir. 1971), and it is not in controversy here. Moreover, it is now clearly established that the subjective purposes of the individual in obtaining the education are irrelevant. Bodley v. Commissioner,56 T.C. 1357 (1971); Weiler v. Commissioner,54 T.C. 398 (1970).
Upon examining petitioner's educational expenses in the light of section 162 of the Code and the regulations we find that the education obtained by her did in fact maintain or improve the skills required by her in her existing employment within the meaning of section 1.162-5(a)(1) of the regulations. In 1983, she was working as a teaching assistant. The educational expenses incurred by petitioner in 1983 all related to courses in education. Clearly, education *594 courses would be beneficial to a teaching assistant and would improve or maintain skills which she used in her work. Thus, petitioner's educational expenditures are deductible under section 1.162-5(a)(1) unless the deduction is precluded by section 1.162-5(b)(2) or (3). These two subparagraphs set forth two exceptions to the general rule: educational expenses are not deductible either if, (b)(2), the education is necessary to meet the minimum educational requirements for qualification in the taxpayer's employment or other trade or business, or if, (b)(3), the education is part of a program of study leading to the qualification of the taxpayer for a new trade or business. 1. Section 1.162-5(b)(2) minimum educational requirements.Paragraph (b)(2) is concerned with the minimum qualifications of the taxpayer's trade or business at the time the educational expenses at issue are incurred. Such expenses are not deductible if incurred to meet the minimum educational requirements for qualification in the individual's present position. To determine petitioner's trade or business, we must look to what she was actually doing in 1983. *595 Wyatt v. Commissioner,56 T.C. 517 (1971). Paragraph (b)(2)(i) tells us that "[t]he minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved". There is no question that she had at least met the requirements of her employer and had measured up to the standards of the profession of a teaching assistant. Moreover as a teaching assistant, she was required to and in fact had obtained on September 1, 1980, a temporary license from the New York State Education Department. On September 1, 1981, she received a continuing certificate as a teaching assistant. The requirements for obtaining the continuing certificate were six credit hours in education and one year of employment with the temporary license. Petitioner had thus met the minimum educational requirements as prescribed by State law to work as a teaching assistant two years prior to the time that she incurred the educational expenses at issue in this case. Accordingly, the deduction of petitioner's *596 1983 educational expenses, otherwise allowable under section 1.162-5(a)(1), is not defeated by section 1.162-5(b)(2). We therefore pass on to consider whether section 1.162-5(b)(3) presents an insuperable obstacle to the allowance of that deduction. 2. Section 1.162-5(b)(3) new trade or business. Educational expenditures are nondeductible if they are made for education which is a part of a program of study which will lead to qualifying the taxpayer in a new trade or business. Section 1.162-5(b)(3)(i). Petitioner contends that the educational expenses which led to her baccalaureate degree did not lead to qualifying her in a new trade or business because she was already in the trade or business of teaching. Petitioner argues that she entered the trade or business of teaching in 1963 when she began teaching at St. Cecilia's School and continued in that profession through 1983. She also points to her service as a "substitute teacher" in a federally funded Head Start program during the period 1973-1977 and thereafter consecutively as a tutor (1977-1979) and a teaching assistant from 1979 until she obtained her degree in 1984, and argues that she was thus already engaged *597 in "teaching" prior to getting her college degree in 1984. We hold that petitioner was not in the trade or business of teaching in either parochial or public schools in 1983, and that her 1983 educational expenses were incurred in a program of study leading to qualifying her as a teacher, a new trade or business within the meaning of the regulations. We first dispose of the contention that petitioner's work as a teacher at St. Cecilia's school during the period 1963-1966 established her as a teacher and that her education thereafter did not lead to qualifying her in a new trade or business. It is quite true that during the period 1963-1966 petitioner was permitted to teach at that parochial school without having been certified since the Diocese did not then require certification. She thus qualified as a teacher at that time notwithstanding that she would not have qualified as a teacher in the public schools without certification. However, petitioner in 1966 ended her employment with the Diocese at St. Cecilia's in order to raise her family. There is no indication in the record that she was merely on a leave of absence, and there is no evidence whatever that she planned to resume *598 teaching at some specified later date or even in the indefinite future. We must conclude on this record that petitioner was no longer a teacher once she left St. Cecilia's. In fact she did not reenter the field of education even in a peripheral way until some seven years later in 1973. This case is thus sharply to be distinguished in this respect from those cases involving a comparatively brief and temporary absence from one's job, where the taxpayer has been regarded as still being engaged in the same trade or business. Ford v. Commissioner,56 T.C. 1300 (1971), affd. per curiam 487 F.2d 1025 (9th Cir. 1973) (one year absence); Furner v. Commissioner,393 F.2d 292 (7th Cir. 1968), revg. 47 T.C. 165 (1966) (one year absence). Cf. Haft v. Commissioner,40 T.C. 2 (1963). As was recognized in an entirely different context in Harrison v. Schaffner,312 U.S. 579, 583 (1941), "'Drawing the line' is a recurrent difficulty in those fields of law where differences in degree produce ultimate differences in kind. See *599 Irwin v. Gavit,268 U.S. 161, 168". On the facts before us, absence for such a substantial period of time -- seven years -- particularly in the context of the present record, calls for a result here that is different from that reached in the Ford and Furner cases. In this respect, this case is more comparable to the cases involving prolonged absence from the job where there was no showing that the taxpayer had been making prompt efforts to resume his work. Cf. Reisinger v. Commissioner,71 T.C. 568, 573-574 (1979); Corbett v. Commissioner,55 T.C. 884, 889 (1971). We reject petitioner's employment by the Diocese during the period 1963-1966 as a basis for treating her as a teacher when she incurred the 1983 educational expenses. The record is also inadequate to support petitioner's position that she was a "teacher" in 1983 because she was a "teacher" during the period September 1973-June 1977. As to that period, the parties have stipulated merely that she "was employed in the federally funded Head Start Program * * * as a secretary, bookkeeper, and substitute teacher". There is no showing that her position was not basically *600 that of a secretary and bookkeeper, or that whatever services, if any, that she may have rendered as a "substitute teacher" were other than de minimis. However, the record does show that although she was not certified under New York Education Law as a substitute teacher, certification was not necessary since she was not required to be certified in the federally funded program. Nevertheless, the record is entirely too sparse and unsatisfactory to conclude that petitioner was engaged in the trade or business of teaching to any significant extent during this period. In any event, a gap of some five years between her work in that program and the 1983 expenses in question would prevent that work from being favorably considered as the foundation for allowance of a deduction for those expenses. From September 1977 until June 1979 petitioner was employed as a tutor in the so-called Wayne Finger Lakes Tutorial Program in Sodus High School. Although she tutored students in that program, she was not permitted to plan lessons or evaluate students. From September 1979 through the tax year 1983 and up to June 1984, when she had just obtained her college degree, petitioner was employed as *601 a teaching assistant at Sodus Central High School. In our judgment, she was not yet a "teacher" either when she was working as a tutor or as a teaching assistant. As a teaching assistant, she was not permitted to plan lessons, evaluate students, or issue grades. Indeed, a certified teacher was required to be in the classroom with her at all times. Her 1983 educational expenses were truly part of a program of study leading to a degree in education which served to qualify her for certification as a teacher -- a new trade or business within the meaning of section 1.162-5(b)(3) of the regulations. As such, they were not deductible as ordinary and necessary business expenses. Diaz v. Commissioner,70 T.C. 1067 (1978), affd. without published opinion 607 F.2d 995 (2d Cir. 1979); Kuh v. Commissioner,T.C. Memo. 1983-572, 46 T.C.M. 1405, 52 P-H Memo T.C. par. 83,572. Cf. Grover v. Commissioner,68 T.C. 598 (1977); Davis v. Commissioner,65 T.C. 1014, 1019 (1976); *602 Glenn v. Commissioner,62 T.C. 270 (1974); Weiszmann v. Commissioner,52 T.C. 1106, 1111 (1969), affd. 443 F.2d 29 (9th Cir. 1971); Cristea v. Commissioner,T.C. Memo. 1985-533, 50 T.C.M. 1306, 54 P-H Memo T.C. par. 85,533. In any realistic appraisal of petitioner's work as a tutor, or even more strongly in her favor, as a teaching assistant, she was not yet a teacher. Her work did not involve those duties that we regard as essential to the teaching function. It was only in 1984 after petitioner received her degree that she became a teacher. As a teacher, petitioner then had for the first time full responsibility for all aspects of teaching, including planning, teaching, and evaluation. The change from teaching assistant to teacher involved such significant changes in control and responsibilities that petitioner cannot be found to be in the same trade or business in the tax year 1983. To be sure, we are aware that section 1.162-5(b)(3)(i) of the regulations states that "all teaching and related duties shall be considered to involve the same general type of work". Petitioner has not specifically made any contention *603 based on that language. However, the possible point was considered in Diaz v. Commissioner, supra, case also involving a teaching assistant, where the Court said (70 T.C. at 1075): This is not a case invoking the language in the regulations that all teaching and related duties shall be considered to involve the same general type of work. Sec. 1.162-5(b)(3)(i), Income Tax Regs. Each example used to illustrate this regulation involves a classroom teacher whose duties are not significantly changed when additional responsibilities are assumed. However, the petitioner was not a certified or licensed classroom teacher to begin with, and is thus not explicitly included by the examples. Moreover, we do not believe these examples suggest that a shift from paraprofessional to classroom teacher, with the significant changes in responsibility and control that accompany such a shift, is within the same category as those changes in duties that do involve the same general type of work. We have already concluded that petitioner, as a teaching assistant, was not "teaching" in 1983, and, in accordance with Diaz, the language in section 1.162-5(b)(3)(i) of the *604 regulations is not helpful to her. This case is to be distinguished from cases involving a teacher, certified as such in another jurisdiction, who incurs educational expenses. Laurano v. Commissioner,69 T.C. 723 (1978), relied upon by petitioner, is such a case, and does not require us to reach the same result on the very different record in the present case. This case is also distinguishable from Toner v. Commissioner,623 F.2d 315 (3d Cir. 1980), revg. 71 T.C. 772 (1979), a case regarded as involving "rather novel facts" (623 F.2d at 320), where the taxpayer was actually engaged in actual teaching (not as a teaching assistant) when she incurred the educational expenses in controversy. In sum, we hold that petitioner's 1983 educational and related transportation expenses are not deductible under section 162(a) of the Code as ordinary and necessary business expenses, since her expenses were part of a program of study leading to her qualification in a new trade or business within the meaning of section 1.162-5(b)(3)(i) of the regulations. Decision will be entered under Rule 155.
Footnotes
1. The record fails to explain the difference, if any, between Sodus High School and Sodus Central High School.↩
2. Section 3009 provides: 1. No part of the school moneys apportioned to a district shall be applied to the payment of the salary of an unqualified teacher, nor shall his salary, or any part thereof, be collected by a district tax except as provided in this chapter. 2. a. Notwithstanding any other provision of law to the contrary, the school authorities of any school district shall have the power, in their discretion, to employ persons as teacher aides who shall assist the regular teacher or teachers of the district in the performance of their teaching functions by performing those nonteaching duties otherwise performed by such regular teacher or teachers. b. Notwithstanding any other provision of law to the contrary, the school authorities of any school district shall have the power, in their discretion, to employ persons as teaching assistants. Such persons, if so employed, shall be authorized to act only under the general supervision of a licensed or certified teacher.↩
3. Sec. 1.162-5, Income Tax Regs., promulgated in T.D. 6291, republished in T.D. 6500, 1958-1 C.B. 67↩. 4. Sec. 1.162-5, Income Tax Regs. promulgated in T.D. 6918, 1967-1 C.B. 36. These revised regulations were applicable to taxable years beginning on or after January 1, 1968. Rev. Rul. 68-191, 1968-1 C.B. 67↩.