T.C. Summary Opinion 2008-84


UNITED STATES TAX COURT


NDILE GEORGE NJENGE AND EKINDE SONE NZELLE RACHEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12793-06S.          Filed July 15, 2008.


Ndile George Njenge and Ekinde Sone Nzelle Rachel, pro sese.

<u>Margaret A. Martin</u>, for respondent.


GOEKE, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This case arises from a petition filed in response to a notice of deficiency.

Respondent disallowed $11,871 of the car and truck expense deductions petitioners claimed on their Schedule C, Profit or Loss From Business, and home mortgage interest and real estate tax deductions claimed on their Schedule A, Itemized Deductions, for 2003.  After the audit, petitioners also claimed entitlement to additional unclaimed Schedule C expenses not represented on their 2003 Federal income tax return, which were also disallowed in the notice of deficiency.  On the record before us, we must decide petitioners' entitlement to those deductions pursuant to sections 162, 163 and 164.[1]

## Background

Some of the facts have been stipulated, and the stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners were residents of California.

Petitioners claimed on Schedule A of their income tax return for 2003 deductions for home mortgage interest and real estate taxes of $3,522 and $3,194, respectively, on property claimed as their residence (residence property).  Petitioners resided at the residence property for all of 2003; at that time title to the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

property was in the name of petitioners' son, Muabe Etuge,[2] as was the mortgage on the property. Mr. Etuge obtained a mortgage loan and took title to the house essentially to procure it for petitioners, who were unable to secure such a loan because of financial difficulties.[3] Mortgage payments from 2001 until the time of trial were made through Camrock General Engineering Co., of which petitioner Ekinde Rachel (Mrs. Rachel) was a registered agent and Mr. Etuge was president. The mailing address of Camrock General Engineering Co. is that of the residence property.

Petitioners also claimed a $15,722 loss on their Schedule C. The income and expenses detailed on the Schedule C were those of a corporation known as NG&N Construction Co. (NG&N), of which Mrs. Rachel was both the registered agent and president, related to work done under a contract discussed infra. The mailing address of NG&N was also that of the residence property.

The gross receipts listed on the Schedule C consisted of a sum reportedly paid to petitioner Ndile Njenge (Mr. Njenge) by his sister, Ntube Alice Njenge, pursuant to a purported contract she entered into with NG&N for work to be done on property which,

---

[2]Muabe Etuge held title to the property from 2001 to 2005, when petitioners assumed ownership.

[3]Petitioners had previously filed for bankruptcy and received a discharge of debtor in a ch. 7 bankruptcy proceeding on Jan. 30, 2001.

at that time, she owned (project property).  Toward the end of 2003 petitioners decided not to repair the property but instead to tear it down and build a new residence.  In 2005 Ntube Alice Njenge quitclaimed the project property to petitioners in lieu of paying the previously agreed-upon amount specified in the contract.[4]  Petitioners took title to the project property on May 23, 2005.

Petitioners claimed Schedule C deductions of $15,767 relating to the car and truck expenses resulting from the hauling of materials and trash to and from the worksite at the project property.  Petitioners lost the documents substantiating their purchase of two vehicles[5] and could provide only a registration card for one of those vehicles;[6] consequently, depreciation and mileage were estimated using the 30-percent depreciation limit for 2003 and a mileage rate of 36 cents.

Petitioners also claimed entitlement to deductions for additional unclaimed Schedule C expenses paid from a Wells Fargo bank account in the name of Mr. Njenge related to the rebuilding

---

[4]The contract specified a payment of $55,000.  Because of the additional work required in tearing down and rebuilding the property, that total was revised to $69,074, which petitioners claimed as income on their 2003 tax return.  Because the property was later quitclaimed to petitioners in lieu of payment, the $69,074 was never received despite its being reported as income.

[5]One 1988 Dodge Dakota and one Chevrolet flatbed truck.

[6]Valid from Apr. 30, 2005, to Apr. 30, 2006.

of the project property. The additional expenses, totaling $64,448.96, were claimed after respondent's audit; the original amount deducted on their Schedule C was $75,292. As a result, petitioners now claim a $3,849 overpayment.

## Discussion

Generally, taxpayers bear the burden of proving the Commissioner's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are strictly a matter of legislative grace, and taxpayers bear the burden of proving they are entitled to any claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain records sufficient to substantiate the amounts of the deductions claimed.

The first issue we must decide is whether petitioners are entitled to claim Schedule A deductions for the mortgage payments and real estate taxes paid on the residence property. Section 163(a) generally allows a deduction for all interest paid or accrued within the taxable year on indebtedness. Section 163(h)(1), however, provides that noncorporate taxpayers generally cannot deduct personal interest. Pursuant to section 163(h)(2)(D), qualified residence interest is excluded from the definition of personal interest; thus, deduction of qualified residence interest within the meaning of section 163(h)(3) is

allowed.  Section 163(h)(3)(A) defines the term "qualified residence interest" as interest paid or accrued on acquisition indebtedness or home equity indebtedness with respect to any qualified residence of the taxpayer.

The aforementioned indebtedness must be an obligation of the taxpayer and not an obligation of another.  See Golder v. Commissioner, T.C. Memo. 1976-150, affd. 604 F.2d 34, 35 (9th Cir. 1979).  Where the residence is occupied exclusively by the taxpayers and all mortgage payments are made by the taxpayers, the indebtedness may be found to rest solely on those taxpayers. See Uslu v. Commissioner, T.C. Memo. 1997-551.  Conversely, where title to the property and the debt to a third-party lender for the mortgage are held by another, taxpayers may not be found to hold the exclusive burden and benefit of the property and therefore are not entitled to a deduction.  See Loria v. Commissioner, T.C. Memo. 1995-420.  Where the taxpayers are equitable and beneficial owners of the property, enjoying exclusively the burden and benefit of the property, payments of interest are deductible.  Uslu v. Commissioner, supra.  Thus, the point at issue is whether petitioners are the equitable and beneficial owners of the residence property.

Respondent contends that because petitioners had no legal obligation to make mortgage payments and did not hold legal title to the residence property, they are not entitled to deduct the

mortgage payments.  Respondent further contends that petitioners did not make any mortgage payments on the residence property; payments were made by Camrock General Engineering Co.

Petitioners assert that while their son, Mr. Etuge, held legal title to the residence property, petitioners owned Camrock General Engineering Co., and through the company they had assumed payment of the mortgage from its outset; mortgage payments were made from a bank account registered to Camrock General Engineering Co., of which petitioners were signatories.  The evidence shows the company was not operating as an active business.  Mr. Njenge testified that the corporation was merely experimental, stating that "the company actually wasn't formed," and they "wanted to try something new * * * but it just didn't happen."  The company was suspended on October 1, 2003, and Mr. Njenge further testified that, as a result, they were "left with a fully-established bank account" that Mrs. Rachel used to pay bills.  See Damron v. Commissioner, T.C. Memo. 1983-451 (finding where the taxpayer leaves his employment with the intention of resuming work in that trade or business at some indefinite time in the future, he is not considered to be "carrying on" the trade or business during that period).  Petitioners stated no intention of resuming the corporate activity in the future.  The corporate bank account functioned only as a personal account for

petitioners, making the mortgage payments directly attributable to them.

Mr. Etuge did not reside at the residence property with petitioners, and petitioners paid for all maintenance of, and taxes on, the property.  Petitioners held exclusively the burden and benefit of the property, using Mr. Etuge's name solely to acquire a mortgage loan and continuously occupying the residence property from the outset of its acquisition.  See Trans v. Commissioner, T.C. Memo. 1999-233; Uslu v. Commissioner, supra. When petitioners moved to the project property, they began serving as landlords for the residence property--renting it out to one tenant and performing all services related to that tenancy.

We find petitioners were equitable and beneficial owners of the property.  Because it is undisputed that the residence property is a "qualified residence" under section 163(h)(4)(A), we find petitioners are entitled to the claimed Schedule A deductions for the mortgage interest on the residence property.

Section 164(a) allows a taxpayer deductions for State and local income taxes, real property taxes, and personal property taxes.  As with mortgage interest, we have held that taxpayers who do not have legal title to property may nevertheless deduct property taxes paid with respect to the property if they establish equitable ownership of the property.  See Trans v.

Commissioner, supra; Uslu v. Commissioner, supra.  Because we have found petitioners to be the equitable and beneficial owners of the residence property, we accordingly find petitioners are entitled to the claimed Schedule A deductions for real estate taxes on the residence property.

The second issue we must decide is whether petitioners are entitled to deduct Schedule C car and truck expenses of $15,767.  Section 6001 requires taxpayers to maintain records sufficient to establish the amount of their income and deductions; we have held that where the taxpayers' testimony is general, conclusory, or uncorroborated, this Court is not required to accept such testimony as sustaining the taxpayers' burden of proof.  See Lerch v. Commissioner, T.C. Memo. 1987-295, affd. 877 F.2d 624 (7th Cir. 1989); Geiger v. Commissioner, T.C. Memo. 1969-159, affd. 440 F.2d 688 (9th Cir. 1971).  Section 274 further requires strict substantiation by either adequate records or sufficient evidence of expenses with respect to listed property as defined in section 280F(d)(4), which includes the Dodge Dakota in the instant case.[7]  The Chevrolet flatbed truck is excluded from the definition of listed property under section 1.274-5T(k)(2)(ii)(J), Temporary Income Tax Regs., 50 Fed. Reg. 46033 (Nov. 6, 1985); however, petitioners have failed to substantiate

---

[7]Listed property includes, but is not limited to, any passenger automobile or any other property used as a means of transportation.  Sec. 280F(d)(4)(A)(i) and (ii).

the deductions associated with this vehicle even in the absence of the requirements of section 274(d).

Petitioners have produced a vehicle registration for only one of the vehicles in question and could not provide proof of purchase or a mileage log for either vehicle; all deductions were estimated. The estimation used for depreciation of the vehicles included the additional 30 percent allowed for new vehicles (for 2003), but petitioners failed to present any purchase records or other evidence to substantiate how long they had owned the vehicles. Petitioners also offered no corroborating evidence for the mileage totals used in the calculation for Schedule C mileage deductions. Therefore, we find petitioners have failed to establish their entitlement to the claimed Schedule C deductions for car and truck expenses.

The final issue we must decide is whether petitioners are entitled to deductions for additional unclaimed Schedule C expenses paid from their Wells Fargo bank account. Pursuant to section 162(a), business expenses can be deducted so long as they primarily benefit the business and pursuant to Rule 142(a) are substantiated by adequate records. See Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. 540 F.2d 821 (5th Cir. 1976); Alemasov v. Commissioner, T.C. Memo. 2007-130. Pursuant to section 262(a), no deductions are allowed for personal, living, or family expenses. We have found business activities engaged in primarily

for the personal benefit of the taxpayers do not constitute business expenses.  See Baldwin v. Commissioner, T.C. Memo. 2002-162.

Petitioners have claimed entitlement to deductions from unclaimed additional expenses paid from a personal Wells Fargo bank account registered to Mr. Njenge.  Petitioners assert the expenses incurred are Schedule C expenses related to rebuilding the project property.  However, while the project property was owned by Mr. Njenge's sister, she lived in New Orleans and did not reside at the project property.  All mortgage documents concerning the project property were sent to petitioners' residence property.  Petitioners have neither sold nor attempted to make any commercial returns on the project property since moving in and have used it solely as their personal residence. Petitioners have provided no evidence to substantiate a claim that the expenses incurred in the construction of their residence on the project property were primarily for the benefit of their business.

Additionally, we have held that taxpayers must be "carrying on" a trade or business, even though unemployed, at the time the expenditures are incurred.  An important factor in determining whether taxpayers are in a trade or business during a period of unemployment is whether the taxpayers' absence from the trade or business is "temporary" or "indefinite".  See Furner v.

Commissioner, 393 F.2d 292 (7th Cir. 1968), affg. 47 T.C. 165 (1966); Haft v. Commissioner, 40 T.C. 2 (1963); Owen v. Commissioner, 23 T.C. 377 (1954); Damron v. Commissioner, supra. In Owen, we found the taxpayer had not been carrying on a trade or business as a lawyer where he provided no legal services during the taxable year and his only income for that year was received from the Government in payment for his services rendered to the U.S. Department of Justice. Conversely, where the taxpayers are actively seeking work for that trade or business and have an expectation of income in the year at issue and subsequent years, or where the taxpayers consider the business to be their full-time employment or devote substantial time and effort to that trade or business, the taxpayers have been found to be carrying on such a trade or business. See Westphal v. Commissioner, T.C. Memo. 1994-537; Louismet v. Commissioner, T.C. Memo. 1982-294.

During 2003 petitioners had only one contract under NG&N for the work being performed on Mr. Njenge's sister's residence at the project property. Mr. Njenge stated in his testimony that no work had been performed up to the date of trial since the completion of that 2003 contract. All of petitioners' income for the 2003 tax year was derived from Mr. Njenge's position as a civil engineer for the Government, and petitioners suspended NG&N in August of that year, before the completion of the work on the

project property.  Thus, we find that petitioners were not carrying on a trade or business, but instead were simply using their existing NG&N bank account to pay expenses related to work performed on the project property.

Lastly, the only financial records petitioners provided relating to the expenses at issue were copies of bank statements that reflect various payments to supply companies and other entities that petitioners testified, in a somewhat conclusory manner, were related to the work performed on the project property.  We have held that such a thin showing of evidence is not sufficient to satisfy taxpayers' burden of substantiation. See Alemasov v. Commissioner, supra (finding credit card records in conjunction with the taxpayer's testimony were not adequate substantiation of business expenses).  Furthermore, petitioners admitted through testimony that some of the claimed expenses connected with that bank account were strictly for personal items and services, deductions for which are disallowed pursuant to section 262(a).  Accordingly, we hold that petitioners have failed to carry their burden of establishing entitlement to the additional Schedule C deductions.

To reflect the foregoing,

Decision will be entered
under Rule 155.