T.C. Memo. 1996-110


UNITED STATES TAX COURT


HERBERT F. AND LOIS A. HEWETT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7217-94.              Filed March 7, 1996.


Herbert F. Hewett and Lois A. Hewett, pro se.

C. Glen McLoughlin, for respondent.


MEMORANDUM OPINION

PAJAK, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) of the Code and Rules 180, 181, and 182. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code for the taxable year in issue, and all Rule numbers refer to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1989 Federal income tax in the amount of $1,129, as well as an

accuracy-related penalty under section 6662(a) in the amount of $226. After concessions by respondent, this Court must decide: (1) Whether petitioner wife's educational expenses are deductible under section 162; (2) whether petitioners are entitled to deduct home office expenses under section 280A; and (3) whether petitioners are liable for an accuracy-related penalty for negligence under section 6662(a).

For clarity and convenience, the findings of fact and opinion have been combined.

Some of the facts have been stipulated and are so found. Petitioners resided in Oklahoma City, Oklahoma, at the time they filed their petition.

Petitioner Lois A. Hewett (petitioner) is a professionally trained pianist. She received both a bachelor's and a master's degree in music from the University of Michigan in 1953 and 1954, respectively. She also completed all the course work, but not the final series of exams and recitals, for a doctorate in music arts from the University of Illinois.

Petitioner has taught piano both privately and at various universities since the 1950's, including the University of Oklahoma. During her 25 years of teaching at the University of Oklahoma, petitioner principally taught piano, one-on-one, to students. She also taught music theory, improvisation, sight reading, accompanying, and ensemble.

Petitioner has performed extensively as a professional pianist. She performed her first solo piano recital when she was in sixth grade, and has continued as a solo performer ever since, usually playing a minimum of one solo recital a year. In addition, she has been a concert performer with various orchestras. As a professional accompanist, she has toured with fellow university faculty members, and has been the local piano accompanist for touring performers, such as Blanche Thebom of the Metropolitan Opera.

During 1988, petitioner retired from the faculty of the University of Oklahoma. In 1988 and 1989, petitioner continued to teach piano privately to students in her home.

In 1989, petitioner began to take courses to become a music therapist. Petitioner enrolled in Central State University, Edmond, Oklahoma (now the University of Central Oklahoma), to commence work on the prerequisites for a master's degree in music therapy. Her 1989 course work at the University of Central Oklahoma included Psychology of Exceptional Children, Applied Guitar, Survey of Emotionally Disturbed Children, Abnormal Psychology and Instrumental Techniques.

Later in 1989, petitioner enrolled in the master's degree program in music therapy offered by the Department of Music of Texas Women's University, Denton, Texas. In 1989, at Texas Women's University, petitioner took a seminar in Music Therapy, and courses in Biofeedback, and Music for the Exceptional Child.

As described at trial by Dr. Donald E. Michel, Professor Emeritus of the Texas Women's University's Music Therapy program and petitioner's faculty adviser, the purpose of music therapy is "to use music to help clients in various categories change for the better, to improve their health." Petitioner further described music therapy as the "prescribed use of music * * * to produce a change for some therapeutic reason. Produce a change in an individual." When asked who makes the decision that an individual needs the help of a music therapist, petitioner replied:

> That would depend upon the situation. If it is a psychiatrist, he would. If it is a school system, they would. If it is in a nursing home, probably the social workers, or whoever the psychologist is there.
> They make the goals, they determine the goals, and the music therapist works with these goals, makes their own individual assessment in terms of how music can specifically help those goals.

Dr. Michel testified that "nearly two-thirds of the music therapy practitioners are serving in one of three categories: mentally impaired, or emotionally disturbed; developmentally disabled; or elderly."

As of the time of trial, petitioner had not obtained her degree in music therapy. She had fulfilled all the requirements for what was called the "equivalency". Petitioner had completed all course work, as well as an internship. She opted to obtain a master's degree, and was involved with finishing a thesis at that point.

After she had completed sufficient course work, petitioner worked as a music therapist in a summer program at Hope Community Center in Oklahoma City, Oklahoma. Hope Community Center is a community mental health treatment center. Petitioner also has worked as a music therapist with Alzheimer's patients in a nursing home, as well as with school children suffering from problems such as developmental delay, microcephaly, and cerebral palsy.

As of the time of trial, petitioner had interviewed for employment as a music therapist at St. Anthony's Hospital and Deaconess Hospital. Both positions were with the psychiatric/mental health departments of the respective hospitals. Petitioner had also interviewed for a music therapist position with the Red Rock Community Center.

Respondent disallowed the following expenses claimed by petitioners on the Schedule C attached to their 1989 Federal income tax return:

| | |
|---|---|
| Education expenses | $2,501 |
| Home office expenses | 255 |
| Depreciation | 472 |
| Telephone expenses | 35 |
| Professional dues | 158 |

Petitioners now claim additional Schedule C educational expenses of $1,665 for 1989.

Section 162 allows a deduction for ordinary and necessary business expenses. Educational expenses are deductible business expenses when the education maintains or improves the skills

required by an individual in his or her employment. Sec. 1.162-5(a)(1), Income Tax Regs. They are not deductible, however, if the education is undertaken either to meet the minimum requirements for that trade or business or to qualify for a new trade or business. Sec. 1.162-5(b)(2) and (3), Income Tax Regs.

Respondent does not dispute the amounts claimed as expenses by petitioners. Rather, respondent asserts that petitioner's educational expenses led to petitioner's qualification for a new trade or business and thus are nondeductible. Petitioners contend that petitioner's coursework did not qualify her for a new trade or business. Petitioners' argument, briefly stated, is that petitioner's trade or business is the field of music, and that music therapy is a specialization within that field. Consequently, petitioner's educational expenses are for additional specialization or improvement of those skills, and are thus deductible under section 162.

It is well established that we must employ objective standards in applying section 1.162-5(b)(3), Income Tax Regs. Bodley v. Commissioner, 56 T.C. 1357, 1360 (1971). In evaluating whether the "new trade or business" exception applies, this Court uses a common sense approach. We compare the types of tasks and activities the taxpayer was qualified to perform before she acquired the education at issue and those she is qualified to perform afterwards. If substantial differences exist in the tasks and activities of the various occupations or employments,

then each such occupation or employment constitutes a separate trade or business. <u>Davis v. Commissioner</u>, 65 T.C. 1014, 1019 (1976). In applying the test, we have found different trades or businesses within the same general field. See, e.g., <u>Reisinger v. Commissioner</u>, 71 T.C. 568, 577 (1979) (physician's assistant different from licensed practical nurse); <u>Glenn v. Commissioner</u>, 62 T.C. 270, 275 (1974) (certified public accountant different from licensed public accountant).

Petitioners bear the burden to prove that they are entitled to the deductions in question. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Petitioners must prove that the education expenses neither qualify petitioner for a new trade or business nor are necessary to meet the minimum requirements for qualification as a music therapist.

Petitioner's trade or business prior to her studies at the University of Central Oklahoma and Texas Women's University was that of a professional pianist and piano teacher. After retirement from the faculty of the University of Oklahoma in 1988, her teaching activities for 1988 and 1989 consisted of private piano lessons given in her own home.

After her studies at the two universities, petitioner was qualified to work as a music therapist. In their trial memorandum, petitioners explain the tasks and activities of a music therapist as follows:

Music therapy is the use of music to restore, maintain and improve the mental, emotional and physical health of people. Music therapists plan programs to meet those needs, either acting alone or with other therapists. They use instrument playing, singing, improvisation, rhythmic experiences and other aspects of music to accomplish this goal. In effect, they use music to achieve non-musical progress in their clients.

After due consideration of the record before us, we find that petitioner's occupation as a professional pianist and piano teacher is different from the services she performs and will perform as a music therapist. While performance and teaching skills are no doubt skills utilized by a music therapist, we believe that the specific therapeutic goals of music therapy exert an influence over a music therapist's tasks and activities such that the tasks and activities differ from those of a professional pianist and teacher. Rather than teaching music skills to a student, a music therapist uses music skills to effect a therapeutic change in an individual. Significant in this regard are the following statements by Dr. Michel:

[A] music therapist has to be able to adapt the music skills in another way to meet the needs of the client.
And that is quite different than performing on the stage or teaching in the studio. There are some similarities with the teaching area, but not so much in the performance, so music therapists have to learn to adapt those skills to make use of them to follow the goals that are set for therapy.

* * * * * * *

And music therapists are teaching sometimes, but if you are a teacher of music, your primary reason for teaching is to teach music skills. If you are a music therapist, it is to use music or help clients learn

other skills that they need to learn.  Or to change behaviors that need to change.

Though Dr. Michel did not testify as an expert witness, we found him to be extremely credible and knowledgeable about the field of music therapy.  Thus, based on the record we find that petitioner's expenditures were for education that led to her qualification in a new trade or business.  Sec. 1.162-5(b)(3)(i), Income Tax Regs.  Therefore, these expenses are nondeductible personal expenses under section 262.

Alternatively, even if the education did not lead to qualification in a new trade or business as a music therapist, the educational expenditures are nondeductible because they were incurred to enable petitioner to meet the minimum educational requirements for qualification as a music therapist.  Dr. Michel stated that without the music therapy course of study, someone with performance skills alone could not be a music therapist.  Petitioner likewise admitted that prior to her music therapy course work, she would not have been considered for the therapist position she held at Hope Community Center, or the other facilities at which she interviewed, because she would not have been qualified.

We have no choice but to conclude that the educational expenses were incurred to enable petitioner to meet the minimum educational requirements for qualification as a music therapist.  Sec. 1.162-5(b)(2)(i), Income Tax Regs.  Accordingly,

petitioner's educational expenditures are nondeductible personal expenses under section 262.

On Schedule C of their 1989 tax return, petitioners claimed a deduction in the amount of $255 for what they termed "home expenses of teaching and practicing". The expenses were based on a percentage of the square footage of petitioners' residence where a Steinway concert grand piano, measuring more than 10 feet in length, was located. The piano sits in an alcove in the living room, and extends out into the living room. There is no partition to separate the alcove from the rest of the room.

Section 280A generally disallows a deduction with respect to the business use of a taxpayer's personal residence. Section 280A(c)(1)(A), however, provides that section 280A(a) shall not apply if a portion of the taxpayer's personal residence is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer. The exclusive use test does not require that the portion of a room used for business must be separated physically from the rest of the room by a wall, partition, or other demarcation, but only that the absence of such a physical separation is a factor for the Court to weigh. Williams v. Commissioner, T.C. Memo. 1991-567.

Petitioner testified that she used the piano strictly for teaching and practicing. We are satisfied that the area where the piano was located was used exclusively by petitioner for her

professional teaching and practicing activities during 1989. Accordingly, petitioners are allowed to deduct their home office expenses for the year in issue.

On this entire record, we are satisfied that the section 6662(a) accuracy-related penalty for negligence should not be imposed.

<u>Decision will be entered</u>

<u>under Rule 155.</u>