T.C. Memo. 1997-33

UNITED STATES TAX COURT

JOHN H. HUDGENS III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7062-94.                    Filed January 21, 1997.

John H. Hudgens III, pro se.

<u>Lawrence B. Austin</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

POWELL, <u>Special Trial Judge</u>:  This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1]  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1990 and 1991 in the amounts of $641 and $776, respectively.

After concessions, the sole issue is whether petitioner is entitled to deduct as educational expenses costs incurred obtaining a master of laws (LL.M.) in taxation under section 162. Petitioner resided in Columbia, South Carolina, at the time he filed his petition.

FINDINGS OF FACT

Petitioner graduated from The Citadel in 1984 with a B.S. degree in business administration.  Soon thereafter, petitioner enrolled at the University of South Carolina (USC).  In December 1987, petitioner graduated from USC with a J.D. degree and a master's in taxation from the business school.  Petitioner accepted a position on the tax staff of Arthur Andersen & Co. (Arthur Andersen) in January 1988.  At Arthur Andersen, petitioner spent approximately 30 to 40 percent of his time preparing tax returns, 40 to 50 percent researching the tax law, and the remainder consulting clients about tax matters.

In March 1990, petitioner quit his job at Arthur Andersen. After leaving Arthur Andersen, petitioner worked for John Shell Associates, Inc., a temporary accounting firm for 4 weeks. Petitioner did not plan to rejoin either firm.  He then went on active duty with the National Guard and completed an advanced

officer training course at Fort Knox, Kentucky.  In August 1990, petitioner enrolled at Emory University School of Law (Emory) in Atlanta, Georgia, to obtain an LL.M. in taxation.  Petitioner graduated with an LL.M. from Emory in May 1991.

Prior to his graduation from Emory, petitioner began discussions concerning the possibility of his employment with The Southeastern Trust Co. (STC), a privately owned, State-chartered trust company.  Because STC was a young company, it was initially able to offer petitioner only a part-time position.  Petitioner worked part-time for STC from September 1, 1991 to January 31, 1992.  In February 1992, petitioner became a full-time employee of STC as one of STC's five principal trust officers.  Between August 1, 1991 and January 31, 1992, petitioner also worked part time for Jack Williamson & Associates (Williamson), a small accounting firm.  Petitioner anticipated that his part-time employment with Williamson would be temporary.  Petitioner also attended additional National Guard annual training after his graduation from Emory.  On his 1991 Federal income tax return, petitioner reported income in the amount of $2,800 from 5 months' employment at Williamson[2] and $6,217 from STC.  Petitioner also reported $7,123 of income from the National Guard activities.

---

[2]  For 1991, petitioner reported wages in the amount of $16,140. According to the two Forms W-2 attached, petitioner received wages in the amounts of $6,217 from STC and $7,123 from the Department of Defense.  We assume that the remaining $2,800 was received from Williamson.

Hugh Z. Graham, Jr. (Mr. Graham), an executive vice-president of the Columbia, South Carolina, office of STC described the business of STC as

65 to 80 -- 65 to 70 percent investment management for our clients.

The rest of the services that we provide are the other fiduciary kinds of things that you would see in a trust company such as bill paying, and report making, and you know, investment, objective-setting, and those kinds of things, like that.

And then, of course, there is the necessity to -- for all the peripheral things, like the fiduciary tax aspects of what we do * * *

Mr. Graham further testified that (1) petitioner's duties included account administration and primarily new business development; (2) all of the principal trust officers performed similar duties; (3) excluding petitioner, none of the principal trust officers were certified public accountants or possessed a master's degree in taxation, and only one other was an attorney; (4) petitioner prepared most of the fiduciary tax returns for the Columbia office; (5) petitioner served as treasurer of STC; and (6) all of the principal trust officers provided some tax advice. Petitioner's description of the duties he performed at STC generally matched Mr. Graham's; however, petitioner emphasized the tax aspects to a greater extent.

On his 1990 and 1991 Federal income tax returns petitioner claimed employee business expense deductions for the cost of obtaining his LL.M. degree in the amounts of $11,476 and $13,033,

respectively. In the notice of deficiency respondent, among other things, disallowed the educational expense deductions.

OPINION

Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Personal expenses are not deductible. Sec. 262(a). Expenses for education may be deductible as expenses of a trade or business if certain requirements set forth in the regulations are met.[3] See sec. 1.162-5, Income Tax Regs. As a threshold matter, the statute requires that a taxpayer incur the educational expenses in "carrying on" a trade or business. Sec. 162(a).

Whether a taxpayer is engaged in a trade or business and the nature of that trade or business are questions of fact. Ford v. Commissioner, 56 T.C. 1300, 1307 (1971), affd. 487 F.2d 1025 (9th Cir. 1973). A taxpayer may be in the trade or business of being an employee. Primuth v. Commissioner, 54 T.C. 374, 377 (1970). The temporary cessation of a trade or business does not preclude a finding that a taxpayer was carrying on that trade or business during the period of cessation. Haft v. Commissioner, 40 T.C. 2, 6 (1963). Thus, even an unemployed taxpayer may be considered to be carrying on a trade or business if the taxpayer was previously

---

[3] Respondent does not contend that petitioner fails to satisfy the limitations set forth in the regulations concerning the deduction of costs for entry-level or upward-bound education. See sec. 1.162-5(b), Income Tax Regs.

involved in and intended to return to a particular trade or business. Id. In order to take advantage of what has been described as the "hiatus" principle, a taxpayer must show that during the hiatus he intended to resume the same trade or business. See Estate of Rockefeller v. Commissioner, 762 F.2d 264, 270 (2d Cir. 1985) (citing Sherman v. Commissioner, T.C. Memo. 1977-301), affg. 83 T.C. 368 (1984). If substantial differences exist in the tasks and activities of the employments undertaken before and after the period of education, then each employment constitutes a separate trade or business. Davis v. Commissioner, 65 T.C. 1014, 1019 (1976). For example, this Court has held that a helicopter pilot is engaged in a different trade or business than an airline pilot. Lee v. Commissioner, T.C. Memo. 1981-26, affd. 723 F.2d 1424 (9th Cir. 1974). Similarly, we have held that a licensed practical nurse is not in the same trade or business as a registered nurse. Reisinger v. Commissioner, 71 T.C. 568 (1979).

Petitioner asserts that, under the hiatus principle, he was engaged in a trade or business as a "tax consultant" while earning his LL.M. at Emory, because in his view he was employed as a "tax consultant" both before and after his enrollment at Emory. Petitioner primarily relies on a comparison of his duties at Arthur Andersen with his duties at STC. Respondent contends that the nature of petitioner's employment differed substantially

before and after the educational hiatus, and as such, the educational expenses are nondeductible personal expenses.

We recognize at the outset that in today's business world the effects of tax laws are driving considerations in virtually all decisions. In this sense, a knowledge of the tax laws may well be a common denominator in various professions from legal practice as a tax lawyer, to the practice of tax accounting, to the business of asset management, and so on. Nonetheless, we still recognize the separateness of these trades or businesses, even though the lines of demarcation may become somewhat blurred.

Regardless of how we define petitioner's occupations, we conclude that the duties petitioner performed at Arthur Andersen differed substantially from the duties petitioner performed at STC. At Arthur Andersen petitioner predominantly prepared tax returns and researched tax issues. In contrast, the raison d'etre for STC was not preparing tax returns or researching clients' tax problems; it was managing assets. While petitioner may have prepared some tax returns and researched some tax issues at STC, those roles were entirely ancillary to the function of managing client's assets and acquiring new clients.[4] In sum, petitioner's employment at STC did not constitute the same trade or business as his employment at Arthur Andersen, because the

---

[4] Indeed, petitioner recognized in his opening statement that "the duties and tasks and responsibilities at the Southeastern Trust Company may be, in many respects, different from his duties at Arthur Andersen".

tasks and activities performed at STC differed substantially from the tasks and activities performed at Arthur Andersen.

In passing, petitioner mentions that his duties at Williamson were not substantially different from his duties at Arthur Andersen. While this contention may not be disputed, it is not dispositive of the issue before us, because the record does not support the conclusion that petitioner's temporary, part-time work at Williamson established him in the trade or business of accounting after he attended Emory. Indeed, petitioner disavowed any intent to return to the accounting profession at that time. Cf. <u>Link v. Commissioner</u>, 90 T.C. 460 (1988), affd. without published opinion 869 F.2d 1491 (6th Cir. 1989); <u>Reisine v. Commissioner</u>, T.C. Memo. 1970-310.

Accordingly, we hold that petitioner may not deduct the educational expenses in issue. To reflect the concessions,

<u>Decision will be entered under Rule 155</u>.